ROBERTS v SAFFELL

Docket No. 275458. Submitted June 11, 2008, at Detroit. Decided August 21, 2008, at 9:15 a.m. Leave to appeal sought.

Richard R. and Stacey D. Roberts brought an action in the Leelanau Circuit Court against Robert L. and Joanne O. Saffell, seeking damages arising from the defendants' alleged failure to disclose a termite infestation in a residence that the plaintiffs purchased from the defendants. The plaintiffs alleged breach of contract, fraudulent misrepresentation, silent fraud, and innocent misrepresentation. All the claims were based on the defendants' response of "no" in a seller's disclosure statement (SDS) to the inquiry concerning any history of infestation. The SDS was provided by the defendants in compliance with the requirements of the Seller Disclosure Act, MCL 565.951 *et seq*. Before trial, the plaintiffs moved to dismiss all theories of liability except innocent misrepresentation. The court, Philip E. Rodgers, Jr., J., granted the motion. The defendants argued that actions for innocent misrepresentation may not be brought under the act and moved for summary disposition. The court denied the motion. Following a jury trial where the jury awarded the plaintiffs damages and costs, the court entered a judgment and order in favor of the plaintiffs. The defendants appealed.

The Court of Appeals *held*:

1. A claim of innocent misrepresentation is shown where a party detrimentally relies on a false representation in such a manner that the injury inures to the benefit of the party making the misrepresentation. The essence of an innocent misrepresentation claim is that the plaintiff need not prove that the defendant knew or should have known that the representation was false or that the defendant intended to deceive the plaintiff into relying on the false or misleading statement. False statements that the plaintiff relied on are actionable under the theory of innocent misrepresentation irrespective of whether the defendant acted in good faith in making them.

2. The act requires a transferor to complete the SDS by answering the questions in good faith and with honesty on the basis of the information actually known to the transferor at the

time the SDS is completed. The act does not require a transferor to exercise ordinary care to discover defects in the property being transferred. A transferor may not be held liable for any errors, inaccuracies, or omissions in an SDS unless they were within the transferor's personal knowledge.

3. A transferor cannot be found liable for an innocent misrepresentation regarding a disclosure required under the act because an innocent-misrepresentation claim would allow liability for erroneous information even if the transferor lacked personal knowledge that the information was false and acted in good faith. The act precludes the imposition of liability on transferors who lack personal knowledge with respect to errors, inaccuracies, or omissions in an SDS. The trial court, in permitting the plaintiffs' innocent-misrepresentation claim, failed to recognize the statutory exemption from liability when transferors lack personal knowledge of errors in an SDS. The trial court erred in denying the defendants' motion for summary disposition. The judgment and order of the trial court must be reversed and the matter must be remanded for entry of a judgment in favor of the defendants.

Reversed and remanded.

WHITE, J., dissenting, stated that the jury was presented with a case concerning whether the defendants knew of the termite infestation and intentionally withheld the information from the plaintiffs. Notwithstanding the terms used at trial, this is not a case concerning innocent misrepresentation. The issues of the defendants' knowledge and their credibility, as well as their good faith, were properly submitted to the jury. There was ample evidence to support the jury's conclusion that the defendants had knowledge of the infestation and did not act in good faith under the act in not disclosing that knowledge. The judgment and order of the trial court should be affirmed.

1. VENDOR AND PURCHASER — RESIDENTIAL PROPERTY — SELLER DISCLOSURE ACT.

The Seller Disclosure Act does not require a transferor to exercise ordinary care to discover defects in the property being transferred (MCL 565.951 *et seq.*).

2. VENDOR AND PURCHASER — SELLER DISCLOSURE ACT — SELLER'S DISCLOSURE STATEMENTS — INNOCENT MISREPRESENTATION.

A transferor of property may not be held liable under a theory of innocent misrepresentation with respect to errors, inaccuracies, or omissions in a seller's disclosure statement provided in accordance

with the Seller Disclosure Act; innocent misrepresentation is not a viable theory of liability under the Seller Disclosure Act (MCL 565.951 *et seq.*).

*Mark Granzotto, P.C.* (by *Mark Granzotto*), for the plaintiffs.

*Traverse Legal, P.L.C.* (by *C. Enrico Schaefer*) (*Bendure & Thomas,* by *Mark R. Bendure,* of counsel), for the defendants.

Before: MARKEY, P.J., and WHITE and WILDER, JJ.

MARKEY, P.J. Defendants appeal by right a judgment entered after a jury trial awarding plaintiffs $86,813 in damages and costs. Plaintiffs claim that defendants failed to disclose a termite infestation in the residence plaintiffs purchased from defendants. Before trial, the trial court granted plaintiffs' motion to dismiss all theories of liability except innocent misrepresentation. This claim was based on defendants "no" answer on their seller's disclosure statement (SDS), MCL 565.957, in response to SDS item: "History of infestation, if any: (termites, carpenter ants, etc.)." We agree with defendants' argument that innocent misrepresentation is not a viable theory of liability under the Seller Disclosure Act (SDA), MCL 565.951 *et seq.* Consequently, we reverse and remand for entry of judgment for defendants.

Plaintiffs' complaint originally alleged breach of contract and three fraud claims: fraudulent misrepresentation or common-law fraud, silent fraud, and innocent misrepresentation. All plaintiffs' claims were based on defendants' response to the query regarding infestation on the SDS. After discovery, defendants moved for summary disposition under MCR 2.116(C)(8) and (10), arguing, among other things, that a claim for innocent

misrepresentation cannot exist under the SDA. The trial court denied this motion.

Less than one week before trial, plaintiffs moved to voluntarily dismiss all claims except innocent misrepresentation and to amend their complaint to allege that defendants misrepresented whether structural modifications had been made without necessary permits. At the hearing on plaintiffs' motions and other pretrial matters, defendants again asserted their position that innocent misrepresentation was not a cognizable theory of liability under the SDA. The trial court denied plaintiffs' motion to amend the complaint, ruling that the evidence concerning permits would be admitted on credibility issues. The court, however, granted plaintiffs' motion to dismiss all claims except innocent misrepresentation. With respect to defendants' argument that a claim for innocent misrepresentation was not viable under the SDA, the court reserved its ruling on the issue until the close of plaintiffs' proofs and until after defendants had moved for a directed verdict.

In essence, defendants argued below that liability for an error, inaccuracy, or omission in the SDS exists only if defendants had actual knowledge of the error, inaccuracy, or omission. MCL 565.955(1). Defendants relied on several unpublished opinions of this Court, including *Pena v Ellis*, unpublished opinion per curiam of the Court of Appeals, issued April 18, 2006 (Docket No. 257840); *Huhtasaari v Stockemer*, unpublished opinion per curiam of the Court of Appeals, issued December 20, 2005 (Docket No. 256926); *Timmons v DeVoll*, unpublished opinion per curiam of the Court of Appeals, issued February 24, 2004 (Docket No. 241507); and *Paule v Iwaniw*, unpublished opinion per curiam of the Court of Appeals, issued October 5, 2001 (Docket No. 225590). The trial court rejected defendants' argument

on the basis of this Court's decision in *Bergen v Baker*, 264 Mich App 376; 691 NW2d 770 (2004), which held that in adopting the SDA, "the Legislature intended to allow for seller liability in a civil action alleging fraud or violation of the act brought by a purchaser on the basis of misrepresentations or omissions in a disclosure statement, but with some limitations." *Id.* at 385. The trial court reasoned that *Bergen* prevails over this Court's unpublished opinions and held that actions for innocent misrepresentation may be brought for alleged errors, inaccuracies, or omissions in an SDS, subject to certain limitations. In this regard, *Bergen* held liability is precluded "for errors, inaccuracies, or omissions in a seller disclosure statement that existed when the statement was delivered where the seller lacked personal knowledge, and would not have had personal knowledge by the exercise of ordinary care . . . ." *Id.*

We review de novo a trial court's decision to grant or deny summary disposition. *Id.* at 381. A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of the complaint on the basis of the pleadings alone. *Corley v Detroit Bd of Ed*, 470 Mich 274, 277; 681 NW2d 342 (2004). The motion should be granted if the pleadings fail to state a claim upon which relief can be granted and no factual development could possibly justify recovery. *Id.*

Similarly, the Court reviews de novo the trial court's decision on a motion for a directed verdict. *Sniecinski v Blue Cross & Blue Shield of Michigan*, 469 Mich 124, 131; 666 NW2d 186 (2003). A directed verdict is appropriate only when no factual question exists upon which reasonable minds could differ. *Smith v Foerster-Bolser Constr, Inc*, 269 Mich App 424, 427-428; 711 NW2d 421 (2006).

This case also involves statutory construction, a question of law we review de novo. *Niles Twp v Berrien Co Bd of Comm'rs*, 261 Mich App 308, 312; 683 NW2d 148 (2004). The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. *Id.* at 313. Our Supreme Court provided guiding principles for performing this task in *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 63; 642 NW2d 663 (2002):

> An anchoring rule of jurisprudence, and the foremost rule of statutory construction, is that courts are to effect the intent of the Legislature. To do so, we begin with an examination of the language of the statute. If the statute's language is clear and unambiguous, then we assume that the Legislature intended its plain meaning and the statute is enforced as written. A necessary corollary of these principles is that a court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself. [Citations omitted.]

The common-law rule with respect to real estate transactions is *caveat emptor*.[1] *Christy v Prestige Builders, Inc*, 415 Mich 684, 695 n 7; 329 NW2d 748 (1982). Thus, at common law "a land vendor who surrenders title, possession, and control of property shifts all responsibility for the land's condition to the purchaser." *Id.* at 694. In *Christy*, the Court recognized two exceptions to the general rule of *caveat emptor* regarding negligence actions arising from real estate sales. *Id.* First, the seller has a duty to disclose to the buyer any concealed condition known to the seller that involves an unreasonable danger. Second, after the sale, the seller is liable to those outside the land for a dangerous condition on the land until the buyer discovers or should

---

[1] Latin for "let the buyer beware." Black's Law Dictionary (7th ed). "A doctrine holding that purchasers buy at their own risk." *Id.*

have discovered it. *Id.*; see also *M & D, Inc v McConkey*, 231 Mich App 22, 34; 585 NW2d 33 (1998). Outside the context of a negligence action for personal injury, Michigan recognizes several theories of fraud as exceptions to the common-law rule of *caveat emptor* in real estate transactions: (1) traditional common-law fraud, (2) innocent misrepresentation, and (3) silent fraud. *Id.* at 26-27. In this case, in addition to a claim of breach of contract, plaintiffs originally asserted all three theories of fraud.

To prove a claim of fraudulent misrepresentation, or common-law fraud, a plaintiff must establish that: (1) the defendant made a material representation; (2) the representation was false; (3) when the representation was made, the defendant knew that it was false, or made it recklessly, without knowledge of its truth, and as a positive assertion; (4) the defendant made it with the intention that the plaintiff should act upon it; (5) the plaintiff acted in reliance upon the representation; and (6) the plaintiff thereby suffered injury. See *id.* at 27; see also *Mable Cleary Trust v Edward-Marlah Muzyl Trust*, 262 Mich App 485, 499-500; 686 NW2d 770 (2004), quoting *Hord v Environmental Research Institute of Michigan (After Remand)*, 463 Mich 399, 404; 617 NW2d 543 (2000).

Silent fraud or fraudulent concealment has also long been recognized in Michigan. See *Lorenzo v Noel*, 206 Mich App 682, 684; 522 NW2d 724 (1994). " ' "A fraud arising from the suppression of the truth is as prejudicial as that which springs from the assertion of a falsehood, and courts have not hesitated to sustain recoveries where the truth has been suppressed with the intent to defraud." ' " *Id.*, quoting *Williams v Benson*, 3 Mich App 9, 18-19; 141 NW2d 650 (1966), quoting *Tompkins v Hollister*, 60 Mich 470, 483; 27 NW 651

(1886). But for the suppression of information to constitute silent fraud there must exist a legal or equitable duty of disclosure. *United States Fidelity & Guaranty Co v Black*, 412 Mich 99, 125; 313 NW2d 77 (1981). Further, establishing silent fraud requires more than proving that the seller was aware of and failed to disclose a hidden defect. *McConkey, supra* at 30-32. Instead, to prove a claim of silent fraud, a plaintiff must show some type of representation by words or actions that was false or misleading and was intended to deceive. *Id.* at 31-32, 36.

As noted already, plaintiffs chose to voluntarily dismiss their claims of fraudulent misrepresentation, silent fraud, and breach of contract. Plaintiffs chose to rely solely on their claim of innocent misrepresentation, a doctrine that also has long been recognized in Michigan. *United States Fidelity & Guaranty Co, supra* at 115. "A claim of innocent misrepresentation is shown where a party detrimentally relies on a false representation in such a manner that the injury inures to the benefit of the party making the misrepresentation." *Forge v Smith*, 458 Mich 198, 211-212; 580 NW2d 876 (1998). It is unnecessary to prove that the party making the representation had knowledge that it was false. *Id.*; *United States Fidelity & Guaranty Co, supra* at 115. But for liability under a theory of innocent misrepresentation to arise there must be privity of contract between the party making the representation and the party claiming to have detrimentally relied on it. *Forge, supra* at 212; *McConkey, supra* at 28.

Innocent misrepresentation is quite different from fraudulent misrepresentation and silent fraud. In a common-law fraud action, the plaintiff must establish that the defendant knowingly or recklessly misrepresented a material fact with the intent that the other

party rely on it. *McConkey, supra* at 27; see also M Civ JI 128.01. Likewise, for silent fraud, the plaintiff must prove that the defendant knew of a material fact but concealed or suppressed the truth through false or misleading statements or actions and with the intent to deceive. *McConkey, supra* at 28-33; see also M Civ JI 128.02.

In contrast to fraudulent misrepresentation and silent fraud, the essence of an innocent misrepresentation claim is that the plaintiff need *not* prove that the defendant knew or should have known that the representation was false. *United States Fidelity & Guaranty Co, supra* at 116-117. Likewise, contrary to fraudulent misrepresentation and silent fraud, a plaintiff asserting an innocent misrepresentation claim need not prove that the defendant intended to deceive the plaintiff into relying on the false or misleading representation. *Id.* at 117-118; *McConkey, supra* at 27-28. Indeed, under the theory of innocent misrepresentation, false statements the claimant relied on are actionable " 'irrespective of whether the person making them acted in good faith in making them . . . .' " *United States Fidelity & Guaranty Co, supra* at 116, quoting 37 Am Jur 2d, Fraud and Deceit, § 195, p 257.

It is against this background of the common law that we examine whether a claim of innocent misrepresentation is viable within the context of a response on a seller's disclosure statement required by the SDA. Contrary to the trial court's conclusion, this Court did not decide this issue in *Bergen, supra.* In that case, the plaintiffs had purchased a home from the defendants and subsequently discovered a significant leak in the home's roof. *Bergen, supra* at 377. The defendants' SDS disclosed that the roof had leaked in the past but asserted that it had been completely repaired. *Id.* at

378. The plaintiffs sued under theories of "fraud, negligent misrepresentation, and breach of contract arising out of defendants' alleged failure to disclose the leaking roof." *Id.* at 377. Finding no genuine issue of material fact existed regarding reliance, the trial court granted summary disposition to the defendants on the plaintiffs' claims of fraud and negligent misrepresentation.[2] *Id.* at 379-380. This Court reversed, but in doing so only discussed theories of liability based on fraudulent misrepresentation and silent fraud. *Id.* at 382. This Court held that the trial court erred in ruling that no material issue of fact remained for trial. *Id.* at 381, 389. In particular, the *Bergen* Court held that the plaintiffs had produced sufficient evidence to permit "a reasonable fact-finder [to] infer that [the] defendants knew about the leak yet proceeded in bad faith by impermissibly failing to disclose the condition." *Id.* at 388. Thus, the

---

[2] Plaintiffs did not assert negligent misrepresentation in this action, although in their original fraud count, plaintiffs asserted that defendants "knew, or should have known" the representations were false. In a negligent misrepresentation action, the plaintiff must prove that "a party justifiably relied to his detriment on information provided without reasonable care by one who owed the relying party a duty of care." *Law Offices of Lawrence J Stockler, PC v Rose*, 174 Mich App 14, 33; 436 NW2d 70 (1989). Michigan recognized negligent misrepresentation as a way of imposing third-party liability for the negligent performance of a contract. See *Williams v Polgar*, 391 Mich 6, 18-23; 215 NW2d 149 (1974) (holding that an abstractor could be found liable to third parties for negligent preparation of an abstract when the abstractor could reasonably foresee the third parties relying on the accuracy of the abstract). Although we do not address such a claim because it was not pleaded here, we disagree with the *Bergen* Court that the SDA imposes a duty on a seller to exercise ordinary care to discover defects in a home being sold. See *Bergen, supra* at 385. The SDA only imposes a duty on the transferor of real estate covered by the act to honestly disclose items about which the transferor actually knows. See MCL 565.955(1) ("within the personal knowledge of the transferor"); MCL 565.956 ("and known to the transferor"); MCL 565.957 ("known by the seller"); and MCL 565.960 (requiring " 'good faith' mean[ing] honesty in fact").

plaintiffs in *Bergen* produced evidence of material facts to support claims of fraud or silent fraud but not innocent misrepresentation.

This Court, however, in several unpublished opinions has held that a claim of innocent misrepresentation based on disclosures required in an SDS is incompatible with the SDA. See *Paule, supra* at 4 ("[W]e hold that MCL 565.955(1) eliminated any claim based on innocent misrepresentation in the context of a claim premised on a misrepresentation contained in a disclosure statement, because personal knowledge or ordinary care is required by the statute."); *Timmons, supra* at 4 ("With respect to [the] plaintiffs' claim for innocent misrepresentation, . . . such a claim cannot exist under the SDA, because the act itself eliminates any claims based on innocent misrepresentation in reference to alleged misrepresentations within the SDS."); and *Pena, supra* at 3 n 1 ("[T]his Court expressly recognized that [MCL 565.955(1)] limits liability for error and omissions not within the seller's personal knowledge, *Bergen, supra* at 385, precluding 'innocent misrepresentation' claims under the SDA . . . ."). See also *Lane v Dinnocenzo*, unpublished opinion per curiam of the Court of Appeals, issued August 17, 2006 (Docket No. 268370) at 2, holding with respect to the SDA that "a seller is not liable for any error, inaccuracy, or omission in the disclosure form if the error, inaccuracy, or omission was not within the seller's personal knowledge. MCL 565.957. A seller is liable for common law fraud or silent fraud if a seller makes misrepresentations in the disclosure form."

Unpublished opinions are not precedentially binding, and we need not consider them. MCR 7.215(C)(1). Several on this issue, however, are persuasive because they rely on the plain language of the statute. The SDA

modifies the common law and in certain real estate transactions requires the transferor to disclose certain information in a specified format. The act applies to "the transfer of any interest in real estate consisting of not less than 1 or more than 4 residential dwelling units . . . ." MCL 565.952. The SDA excepts certain transfers, such as those made pursuant to court order, familial transfers, transfers related to debt collection, mortgage foreclosure, bankruptcy proceedings, transfers by nonoccupant fiduciaries, and other similar transfers, none of which applies here. MCL 565.953. The SDA requires that the transferor of any real property covered by the act "shall deliver to the transferor's agent or to the prospective transferee or the transferee's agent the written statement required by this act." MCL 565.954(1). The form and substance of the written statement required by the act is set forth in MCL 565.957.[3] The transferor must complete the SDS by answering its questions in "good faith," i.e., with "honesty in fact in the conduct of the transaction." MCL 565.960.

We find nothing in the plain terms of the SDA that requires a transferor of property covered by the act to exercise ordinary care to discover defects in the property being transferred. While good faith and honesty are required when completing an SDS, "[i]f at the time the disclosures are required to be made, an item of information required to be disclosed under [the SDA] is unknown or unavailable to the transferor, the transferor may comply with this act by advising a prospective purchaser of the fact that the information is unknown."

---

[3] "A city, township, or county may require disclosures in addition to those disclosures required by [MCL 565.957], and may require disclosures on a different disclosure form in connection with transactions subject to [the SDA]." MCL 565.959.

MCL 565.956. Further, the SDS must be completed with "the best information available *and known to the transferor.*" *Id.* (emphasis added). MCL 565.957 also explicitly provides that an SDS contains only information actually known to the transferor and that the SDS is not a warranty. MCL 565.957 states regarding the purpose of the SDS and the instructions for its completion, in pertinent part:

> **Purpose of Statement**: This statement is a disclosure of the condition of the property in compliance with the seller disclosure act. This statement is a disclosure of the condition and information concerning the property, *known by the seller*. Unless otherwise advised, the seller does not possess any expertise in construction, architecture, engineering, or any other specific area related to the construction or condition of the improvements on the property or the land. Also, unless otherwise advised, the seller has not conducted any inspection of generally inaccessible areas such as the foundation or roof. *This statement is not a warranty of any kind by the seller or by any agent representing the seller in this transaction,* and is not a substitute for any inspections or warranties the buyer may wish to obtain.

> **Seller's Disclosure**: The seller discloses the following information with the knowledge that even though *this is not a warranty,* the seller specifically makes the *following representations based on the seller's knowledge at the signing of this document.* Upon receiving this statement from the seller, the seller's agent is required to provide a copy to the buyer or the agent of the buyer. The seller authorizes its agent(s) to provide a copy of this statement to any prospective buyer in connection with any actual or anticipated sale of property. The following are representations made solely by the seller and are not the representations of the seller's agent(s), if any. **THIS INFORMATION IS A DISCLOSURE ONLY AND IS NOT INTENDED TO BE A PART OF ANY CONTRACT BETWEEN BUYER AND SELLER.**

**Instructions to the Seller**: (1) Answer ALL questions. (2) *Report known conditions affecting the property*. (3) Attach additional pages with your signature if additional space is required. (4) Complete this form yourself. (5) If some items do not apply to your property, check NOT AVAILABLE. If you do not know the facts, check UN-KNOWN. [Emphasis added.]

In sum, the SDA requires a transferor of certain real property to answer all items required by MCL 565.957 honestly, on the basis of information actually known to the transferor at the time the SDS is completed. *Id.*; MCL 565.956; MCL 565.960. Thus, the SDA creates a duty of disclosure regarding specified items. MCL 565.954(1); MCL 565.957; *Bergen, supra* at 385. Further, the inclusion of items for disclosure in the SDS "does not limit or abridge any obligation for disclosure created by any other provision of law regarding fraud, misrepresentation, or deceit in transfer transactions." MCL 565.961. That is, apart from the SDS, the Legislature has not modified the rule of *caveat emptor* and its common-law exceptions imposing liability for fraud. What the Legislature has done is set forth specific provisions limiting a transferor's potential liability for any errors, inaccuracies, or omissions regarding disclosures required by the SDA by providing:

(1) The transferor or his or her agent is not liable for any error, inaccuracy, or omission in any information delivered pursuant to this act if the error, inaccuracy, or omission *was not within the personal knowledge of the transferor, or* was based entirely on information provided by public agencies or provided by other persons specified in subsection (3), *and ordinary care was exercised in transmitting the information*. It is not a violation of this act if the transferor fails to disclose information that could be obtained only through inspection or observation of inaccessible portions of real estate or could be discovered only by

a person with expertise in a science or trade beyond the knowledge of the transferor.

(2) The *delivery of any information* required by this act to be disclosed to a prospective transferee by a public agency or other person specified in subsection (3) shall be considered to comply with the requirements of this act and relieves the transferor of any further duty under this act with respect to that item of information, *unless the transferor has knowledge of a known defect or condition that contradicts the information* provided by the public agency or the person specified in subsection (3).

(3) The *delivery of a report or opinion* prepared by a licensed professional engineer, professional surveyor, geologist, structural pest control operator, contractor, or other expert, dealing with matters within the scope of the professional's license or expertise, *is sufficient compliance for application of the exemption provided by subsection (1)* if the information is provided upon the request of the prospective transferee, *unless the transferor has knowledge of a known defect or condition that contradicts the information contained in the report or opinion*. In responding to a request by a prospective transferee, an expert may indicate, in writing, an understanding that the information provided will be used in fulfilling the requirements of [MCL 565.957] and, if so, shall indicate the required disclosures, or parts of disclosures, to which the information being furnished applies. In furnishing the statement, the expert is not responsible for any items of information other than those expressly set forth in the statement. [MCL 565.955 (emphasis added).]

We agree with the *Bergen* Court that "it is evident that the Legislature intended to allow for seller liability in a civil action alleging fraud ... brought by a purchaser on the basis of misrepresentations or omissions in a disclosure statement, but with some limitations."[4]

---

[4] To the extent *Bergen* implies otherwise, we find the reasoning of *Pena, supra* at 1-3, persuasive in determining that the SDA does not create a separate cause of action for the violation of its terms but instead

*Bergen, supra* at 385. The first and foremost limitation on a transferor's liability is found in the first half of the first sentence of MCL 565.955(1). "The transferor or his or her agent is not liable for any error, inaccuracy, or omission in any information delivered pursuant to this act if the error, inaccuracy, or omission was not within the personal knowledge of the transferor . . . ." *Id.* As stated by this Court in *Bergen, supra* at 385: "Liability is precluded for errors, inaccuracies, or omissions in a seller disclosure statement that existed when the statement was delivered where the seller lacked personal knowledge" of the error, inaccuracy, or omission.

The second half of the first sentence of subsection 1 of MCL 565.955, read together with subsections 2 and 3, provide a second limitation on a transferor's liability. Specifically, a transferor may not be found liable for errors, inaccuracies, or omissions in an item disclosed in a SDS when the transferor's answer is "based entirely on information provided by public agencies or provided by other persons specified in subsection (3), and ordinary care was exercised in transmitting the information."[5] MCL 565.955(1). Persons specified in subsection 3 include "licensed professional engineer, professional

affords buyers an opportunity to cancel a purchase agreement before closing or thereafter allows for a common-law action for fraud. Because plaintiffs only assert a claim alleging innocent misrepresentation, we do not decide the issue.

[5] Although not necessary to decide this issue, it appears the *Bergen* Court read into the phrase in MCL 565.955(1) "and ordinary care was exercised in transmitting the information" a duty on the part of the transferor to use ordinary care to discover defects requiring reporting in the SDS. But the phrase requires ordinary care only in "transmitting the information," not discovering information. Definitions of "transmit" in *Random House Webster's College Dictionary* (1992) include: (1) "to send or forward, as to a recipient or destination; dispatch; convey" and (2) "to communicate, as information, or news." Thus, even if the phrase "and ordinary care was exercised in transmitting the information" also modi-

surveyor, geologist, structural pest control operator, contractor, or other expert, dealing with matters within the scope of the professional's license or expertise . . . ." MCL 565.955(3). Consequently, when the transferor satisfies the SDA's duty of disclosure regarding an SDS item by basing disclosure entirely on information provided by a public agency or qualified expert, the transferor is not liable for any error, inaccuracy, or omission in the provided information when it is transmitted with ordinary care, unless the transferor has knowledge of a known defect or condition that contradicts the information. In other words, when the transferor has knowledge of errors, inaccuracies, or omissions with respect to information from a public agency or an expert's report or opinion, providing such information, report, or opinion will not satisfy the SDA's duty of disclosure, MCL 565.955(2), nor will the transferor be exempt from potential common-law liability, MCL 565.955(1) and (3).

In sum, the SDA only requires a transferor to honestly disclose information known to the transferor at the time the SDS is completed. MCL 565.956; MCL 565.957. Further, a transferor may not be held liable for any errors, inaccuracies, or omissions in the SDS unless they were within the transferor's personal knowledge. MCL 565.955(1). The SDA expressly states that the transferor "is not liable for any error, inaccuracy, or omission in any information delivered pursuant to this act if the error, inaccuracy, or omission was *not within the personal knowledge* of the transferor" and ordinary care was used in transmitting the information. *Id.* (emphasis added). But the act also states that "[t]he specification of items for disclosure in this act does not

fies the first half of the first sentence of MCL 565.955(1), it requires only that a transferor use ordinary care in communicating his or her actual knowledge.

limit or abridge any obligation for disclosure created by any other provision of law regarding fraud, misrepresentation, or deceit in transfer transactions." MCL 565.961. Considered together, these two sections mean that where an item is specified for disclosure on the SDS, a transferor may be liable for fraud or silent fraud if the elements of those causes of action are proved, including that the transferor possessed personal knowledge about the item but failed to exercise "good faith" by disclosing that knowledge. MCL 565.960; *Bergen, supra.* Correspondingly, a transferor cannot be found liable for an innocent misrepresentation regarding a disclosure required by the act because an innocent misrepresentation claim would allow liability for erroneous information even if the transferor lacked personal knowledge that the information was false and was acting in good faith. *United States Fidelity & Guaranty Co, supra* at 117.

We hold that innocent misrepresentation is incompatible with the exemption from liability afforded by MCL 565.955(1) with respect to a disclosure made on an SDS. Because liability for an innocent misrepresentation may be imposed without regard to whether the party making the representation knew it was false or was acting in good faith and because MCL 565.955(1) precludes imposition of liability on transferors who lack personal knowledge with respect to errors, inaccuracies, or omissions in an SDS, there is no liability for a disclosure made on an SDS under a theory of innocent misrepresentation. By permitting plaintiffs' innocent misrepresentation claim, the trial court failed to recognize the statutory exemption from liability when transferors lack personal knowledge of errors in the SDS. Consequently, plaintiffs' pleadings regarding innocent misrepresentation fail to state a claim upon which relief can be granted, and no factual development could

possibly justify recovery. *Corley, supra* at 277. The trial court erred in not granting defendants' motion for summary disposition on that claim.

We reverse and remand for entry of judgment for defendants. We do not retain jurisdiction.

WILDER, J., concurred.

WHITE, J. (*dissenting*). I respectfully dissent. The majority reverses on the basis that there can be no claim for innocent misrepresentation under the Seller Disclosure Act (SDA), MCL 565.951 *et seq*. Nowhere in defendants' brief or reply brief, however, is this argument made. Although defendants raised the issue below,[1] it is not raised on appeal because the case defendants lost at the trial in this matter was not an innocent misrepresentation case. Rather, the issue presented to the jury was whether defendants knew of the termite infestation and intentionally withheld the information from plaintiffs. Notwithstanding the terms used at trial, this is not innocent misrepresentation. On appeal, defendants challenge whether the evidence was sufficient to support these findings and whether the court wrongly barred evidence that would have supported defendants' position that they had no knowledge. Even during argument in this court, defendants conceded that these are the issues.

The unpublished cases the majority relies on are factually and procedurally different from the instant case. This case was litigated and tried with the jury being informed of the limitations on potential liability under the SDA. The issues of defendants' knowledge and their credibility in denying such knowledge, as well

---

[1] Before trial, the trial court stated on the record that defendants could again raise the issue in a motion for a directed verdict.

as their good faith, were properly submitted to the jury, and there was ample evidence from which the jury could have concluded that defendants had knowledge of the infestation and did not act in good faith in completing their seller's disclosure statement under the SDA.

I would affirm.