*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

EDWARD SCOTT KONDRAT,

Plaintiff-Appellant,

v

ARNOLD SERVITTO and ANN MARIE
SERVITTO,

Defendants-Appellees.

UNPUBLISHED
March 26, 2019

No. 341990
Macomb Circuit Court
LC No. 2016-003486-ND

Before: O'BRIEN, P.J., and JANSEN and RONAYNE KRAUSE, JJ.

PER CURIAM.

Plaintiff appeals as of right[1] the trial court's order granting summary disposition to defendants, Arnold Servitto (Arnold) and Ann Marie Servitto (Ann), in this dispute over the sale of a home. We reverse and remand.

## I. FACTUAL BACKGROUND

Defendants lived at the home at issue for almost 30 years. According to defendants, they decided to move because of medical issues. According to plaintiff, he wanted to purchase a home in the same neighborhood as his parents. He initially rejected two or three previous possible homes due to layout and neighbors before learning about defendants' home from his real estate agent. He walked through the home after work in August of 2015 with his son, wife, and real estate agent, Danielle Guitar. Plaintiff testified that he thought the property appeared nice and Guitar remarked that the home was "well-maintained."

Defendants executed a Seller Disclosure Statement (SDS) on August 11, 2015. When asked if there had been evidence of water in the "Basement/Crawlspace," defendants answered

---

[1] Plaintiff's claim of appeal was initially dismissed, but later reinstated. See *Kondrat v Servitto*, unpublished order of the Court of Appeals, entered February 21, 2018 (Docket No. 341990).

"No." Defendants also indicated that there were no leaks in the roof and that the approximate age of the roof was "5/6 years [sic] including shed." Furthermore, when asked for "History of Infestation if any: termites, carpenter ants, etc.," defendants responded, "No." The SDS bears plaintiff's signature, dated August 31, 2015.

On September 2, 2015, plaintiff and defendants entered into a Purchase Agreement for the sale of the home at the price of $175,000. This Purchase Agreement incorporated and adopted by reference the SDS. The closing of the property occurred on October 15, 2015. Plaintiff testified that the first time he could recall seeing the SDS was at closing, notwithstanding the date of his signature on the SDS. Prior to the closing, plaintiff had an inspection performed on the house. The inspector's report indicated that the roof had no major system safety or function concerns and was in good condition. Additionally, the report indicated that there was "[l]imited review due to insulation cover and finished walls" in the basement. Plaintiff testified that he relied on the inspection report in deciding to purchase and close on the property.

Upon purchasing the home, plaintiff began removing insulation from walls in the basement while upgrading the electrical wiring. Throughout this process, plaintiff discovered approximately fifty mouse carcasses, over thirty mouse poison boxes, mouse traps, and chewed up peanut baits in plastic baggies. Plaintiff then hired an exterminator and had another inspection of the home performed.

Meanwhile, Guitar contacted defendant's real estate agent via e-mail and indicated that plaintiff had discovered a massive infestation of mice within the walls and that plaintiff was prepared to seek legal action. Guitar testified that defendant, Arnold Servitto, followed up with her and at first attempted to disavow knowledge of the infestation but later admitted that he believed the issue may have originated from a craft project involving acorns that Ann Servitto had been working on in the basement. No information regarding any type of infestation was disclosed to Guitar prior to closing on the property.

Arnold testified that defendants replaced the roof five to six years before selling, but it could have been a little longer than that. When defendants were filling out the SDS with their realtor, Arnold said that he did not have the paperwork, and the realtor said to give an approximation. Paperwork from the company that tore off and replaced the roof indicated that the roof had actually been replaced in 2006. Arnold acknowledged the paperwork and that the roof was eight to nine years old at the time of closing. Ann testified that defendants gave an approximation as to the roof age "[b]ecause we really thought it was five to six" years old.

On or about October 21, 2015, plaintiff discovered that defendants made an insurance claim for water damage to their roof on February 12, 2015, which defendants had not disclosed. Upon contacting the insurance company, plaintiff was made aware about water on the first floor coming through the joists and ice damming that came from the second floor to the first floor. Arnold denied that the insurance claim was regarding the roof and testified that the water entering the family room down the wall was the result of an ice jam. In addition, the SDS indicated that there were no roof leaks.

Plaintiff argues that the trial court erred in granting defendants summary disposition because plaintiff sufficiently pleaded a cause of action for silent fraud in his first amended complaint, plaintiff established genuine issues of material fact regarding his reliance on the seller's disclosure statement (SDS), and the lower court improperly concluded that fraud claims required plaintiff to exercise due diligence to discover the fraud. We disagree with plaintiff that the trial court erred in dismissing plaintiff's silent fraud claim, but we agree that the trial court erred in granting defendants summary disposition regarding plaintiff's claims of fraudulent misrepresentation and negligent misrepresentation.

## II. STANDARD OF REVIEW

A grant or denial of summary disposition is reviewed de novo on the basis of the entire record to determine if the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Because the parties and the trial court considered evidence outside of the pleadings, the motion is properly treated as having been brought pursuant to MCR 2.116(C)(10). See *Glittenberg v Doughboy Recreational Industries, Inc*, 436 Mich 673, 680-681; 462 NW2d 348 (1990). When reviewing a motion under MCR 2.116(C)(10), which tests the factual sufficiency of the complaint, this Court considers all evidence submitted by the parties in the light most favorable to the non-moving party and grants summary disposition only where the evidence fails to establish a genuine issue regarding any material fact. *Maiden*, 461 Mich at 120. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v General Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

## III. SILENT FRAUD

Plaintiff first argues that the trial court erred in dismissing Count I of his first amended complaint because he sufficiently pleaded a cause of action for silent fraud, notwithstanding the fact that Count I was labeled as alleging a violation of the Michigan Seller Disclosure Act (SDA), MCL 565.951 *et seq*. Plaintiff contends that the trial court improperly relied on the label rather than the gravamen of the claim. We agree.

"The common-law rule with respect to real estate transactions is *caveat emptor*," Latin for " 'let the buyer beware,' " e.g. " '[a] doctrine holding that purchasers buy at their own risk.' " *Roberts v Saffell*, 280 Mich App 397, 402 n 1; 760 NW2d 715 (2008), aff'd 483 Mich 1089 (2009), quoting *Black's Law Dictionary* (7th ed). At common law, when the seller of land surrenders title, possession, and control of the property to the buyer, all of the responsibility for the land's condition is also transferred to the buyer. *Roberts*, 280 Mich App at 402. However, there are two exceptions to this rule for negligence actions related to the sale of real estate. *Id*. "First, the seller has a duty to disclose to the buyer any concealed condition known to the seller that involves an unreasonable danger. Second, after the sale, the seller is liable to those outside the land for a dangerous condition on the land until the buyer discovers or should have discovered it." *Id*. at 402-403. Michigan courts recognize three theories of fraud as exceptions to the rule of *caveat emptor* in real estate sales: "(1) traditional common-law fraud, (2) innocent misrepresentation, and (3) silent fraud." *Id*. at 403.

Silent fraud "springs from the assertion of a falsehood, and courts have not hesitated to sustain recoveries where the truth has been suppressed with the intent to defraud." *Roberts*, 280 Mich App at 403 (citations and quotation marks omitted). There must be a legal or equitable duty of disclosure for the suppression of such information to constitute silent fraud. *Id*. at 404. The SDA requires the seller of property to honestly answer all items required by MCL 565.957, based on information actually known to the seller at the time that he or she completes the SDS. MCL 565.956; MCL 565.960. The SDA creates a duty of disclosure regarding these specific items. MCL 565.954(1); MCL 565.957. To establish silent fraud, the plaintiff must prove more than the seller was aware of a hidden defect, and failed to disclose it. *Id*. The plaintiff must establish a representation by words or actions that was false or misleading, and intended to deceive the plaintiff. *Id*. "A misleadingly incomplete response to an inquiry can constitute silent fraud." *Alfieri v Bertorelli*, 295 Mich App 189, 193-194; 813 NW2d 772 (2012).

Plaintiff is correct in arguing that courts are obligated to look beyond the labels or names given by the parties and evaluate the true substance of the pleadings instead. *Hurtford v Holmes*, 3 Mich 460, 463 (1855); *In re Traub Estate*, 354 Mich 263, 278-279; 92 NW2d 480 (1958); *Jahnke v Allen*, 308 Mich App 472, 475; 865 NW2d 49 (2014). Indeed, we find that plaintiff has sufficiently and substantively pleaded a claim for silent fraud. The SDA provides that all disclosures must be made in "good faith." Additionally, the SDA defines "good faith" as "honesty in face in the conduct of the transaction." MCL 565.960. When pleading fraud, factual allegations must be stated with particularity. MCR 2.112(B)(1). However, MCR 2.112(B)(2) provides that "[m]alice, intent, knowledge, and other conditions of mind may be alleged generally." MCR 2.112(B)(2). Plaintiff's allegation that defendants breached their legal duty under the SDA by failing to disclose the various conditions within the house is tantamount to saying defendant's disclosures were made in bad faith, which under the circumstances necessarily indicates deceitfulness. By reading plaintiff's complaint as a whole and looking at its substance, it is clear that plaintiff has satisfied the requirements for pleading silent fraud under MCR 2.112. Thus, the trial court improperly determined that plaintiff had not stated a claim for silent fraud.

## IV. RELIANCE

Next, plaintiff argues that the trial court erred in dismissing his claims for fraudulent misrepresentation and negligent misrepresentation because genuine issues of material fact existed whether he relied on the SDS when deciding to purchase the home. We agree.

Under the SDA, "the Legislature intended to allow for seller liability in a civil action alleging fraud . . . brought by a purchaser on the basis of misrepresentations or omissions in a disclosure statement." *Bergen v Baker*, 264 Mich App 376, 385; 691 NW2d 770 (2004). "Liability is precluded for errors, inaccuracies, or omissions in a [SDS] that existed when the statement was delivered, where the seller lacked personal knowledge, and would not have had personal knowledge by the exercise of ordinary care, of any error, inaccuracy, or omission and thus proceeds in good faith to deliver the [SDS] to the buyer." *Id*., citing MCL 565.955, MCL 565.956, and MCL 565.960. Although an "as is" clause in a purchase agreement generally imposes upon the buyer any risks regarding the present condition of the property, it will not preclude a claim of fraud. *Clemens v Lesnek*, 200 Mich App 456, 460; 505 NW2d 283 (1993).

-4-

To establish a claim of fraudulent misrepresentation, or common law fraud, plaintiff must establish the following:

(1) the defendant made a material representation; (2) the representation was false; (3) when the representation was made, the defendant knew that it was false, or made it recklessly, without knowledge of its truth, and as a positive assertion; (4) the defendant made it with the intention that the plaintiff should act upon it; (5) the plaintiff acted in reliance upon the representation; and (6) the plaintiff thereby suffered injury. [*Roberts*, 280 Mich App at 397.]

A plaintiff's reliance on a misrepresentation must be reasonable. *Bergen*, 264 Mich App at 389. A claim for negligent misrepresentation requires " 'pro[of] that a party justifiably relied to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care.' " *Alfieri*, 295 Mich App at 194, quoting *Unibar Maintenance Servs, Inc v Saigh*, 283 Mich App 609, 621; 769 NW2d 911 (2009) (citations and quotation marks omitted).

The trial court found that a genuine question of material fact existed whether defendants materially misrepresented the mouse problem and the age of the roof. Plaintiff argues that the trial court erred in nevertheless dismissing his claims on the grounds that there was no genuine question of material fact whether plaintiff reasonably relied on those misrepresentations. We agree.

Initially, defendants argue that they did not knowingly make any false statements, but we agree with the trial court that, when viewed in the light most favorable to plaintiff, the trial court correctly found a question of fact. Circumstantial evidence may be considered to determine whether genuine issues of material fact exist for summary disposition. *Bergen*, 264 Mich App at 387. "Moreover, questions concerning the state of one's mind, including intent, motivation, or knowledge can be proven by circumstantial evidence." *Id*.

Both defendants testified that they only ever had one or two mice in the house over the entire course of their time living there. Arnold testified that they bought mouse poison after finding mouse droppings but had no subsequent problems. Ann testified, however, that she routinely set out baits for a majority of the time that defendants lived in the home. Guitar asserted that Arnold initially denied a mouse problem but then acknowledged that mice may have been infiltrating the basement as a result of a craft project. Plaintiff testified that he found dead and decayed mice, feces, burrows, baits and traps throughout the home upon demolition. Plaintiff testified that there was a pervasive odor upon moving in that he did not initially notice because defendants had placed air fresheners throughout the house during the prior walkthroughs. A pest control technician who treated the house concluded that, based on his experience, the former owners of the home had baited for mice. Plaintiff testified that he discovered over thirty poison boxes, traps, and peanut baits, in addition to approximately fifty dead mice. The sheer magnitude of the alleged infestation is powerful circumstantial evidence that defendants could not have been unaware of the mouse problem. Thus, a question of material fact exists regarding whether defendants made a material misrepresentation of the mouse problem.

Regarding the age of the roof, Arnold testified that it could have been older than the five to six years indicated on the SDS. Ann testified that they made an approximation of the age, and thought that their approximation was accurate. However, the documents from the roof tear off and replacement indicated that the work was done in 2006. Thus, the roof was about nine years old at the time that defendants completed the SDS. Therefore, the trial court did not err in determining that a question of fact existed regarding whether defendants made a material misrepresentation regarding the age of the roof. In contrast, although defendants made an insurance claim for water damage just months before closing, there is no evidence that there had ever been any water infiltration into the *basement*. The SDS specifically inquired into evidence of water in the "Basement/Crawlspace." Therefore, it does not appear that defendants made a material misrepresentation by answering "No" on this disclosure because there was no evidence of water in the basement before closing.

The primary issue, therefore, is whether the trial court properly determined that "plaintiff has not established he relied on the [SDS] in purchasing the house." Plaintiff testified that he received the SDS when he signed the paperwork at closing. Plaintiff testified that the first time he remembered reading the SDS was at closing[2]. Plaintiff testified that he relied on the inspection, appraisal, and final walkthrough in deciding to proceed with closing and purchasing the house. Plaintiff relies on the following testimony that he gave to argue that he also relied on the SDS:

> *Q*. And if in the [SDS] under History of Infestation it was indicated that there was a mouse infestation in your house, would your wife have ever allowed you to purchase that home?
>
> *A*. No.
>
> *Q*. Would you have ever wanted to purchase that home?
>
> *A*. No.
>
> *Q*. And who would have known about this infestation the best prior to the closing on the home?
>
> *A*. The home – the homeowners.

In denying plaintiff's motion for partial reconsideration, the lower court determined that this testimony did not establish reliance because it was phrased as a hypothetical. However, plaintiff also testified as follows:

> *Q*. So at closing – you testified the last time you remember the [SDS] was at closing; correct?

---

[2] As noted, plaintiff's signature on the SDS is dated August 31, 2015, which is two days before signing the Purchase Agreement, and over a month before officially closing.

*A*. That's when I remember seeing it, yes.

*Q*. So can you say you relied on the [SDS] in deciding to purchase the house?

*A*. That, and my wife and I liking the house because the school district and where the house was.

*Q*. So are you saying you relied on the [SDS] in purchasing that house?

*A*. Also that my wife liked the house and that I liked the house.

*Q*. And also the inspection report?

*A*. And them signing there was nothing wrong with the house, yes.

Although this testimony is not a model of clarity, when plaintiff responded to the question regarding reliance by saying, "That, and [ . . . ]," it can be reasonably inferred that plaintiff is referring to the preceding noun in the question, which is the SDS. Thus, although plaintiff testified that he did not see the SDS until closing, he also indicated that he relied on it in making his decision to purchase the residence. Furthermore, when plaintiff said that he relied on "them signing there was nothing wrong with the house," he is seemingly referring to the defendants' disclosures in the SDS, rather than the report by the professional inspector.

As noted, at summary disposition, the evidence and any reasonable inferences therefrom must be viewed in the light most favorable to the non-moving party. Because plaintiff testified that he relied on the SDS, the trial court erred in determining that he failed to establish reliance. Plaintiff's testimony creates a genuine issue of material fact regarding the reliance elements of his fraudulent misrepresentation and negligent misrepresentation claims. Therefore, the trial court erred in dismissing these claims on that basis.

V. DUE DILIGENCE

The trial court also opined that fraud-based claims required plaintiff to exercise due diligence to discover the fraud. The trial court erred.

MCL 565.955(1) provides:

The transferor or his or her agent is not liable for any error, inaccuracy, or omission in any information delivered pursuant to this act if the error, inaccuracy, or omission was not within the personal knowledge of the transferor, or was based entirely on information provided by public agencies or provided by other persons specified in subsection (3), and ordinary care was exercised in transmitting the information. It is not a violation of this act if the transferor fails to disclose information that could be obtained only through inspection or observation of inaccessible portions of real estate or could be discovered only by a person with expertise in a science or trade beyond the knowledge of the transferor.

In dismissing plaintiff's claims, the court stated:

> Furthermore, the mouse problem and the age of the roof were not concealed but should have been discovered by a reasonably competent inspector. Indeed, plaintiff testified dead mice started falling when he removed drop-ceiling panels in the basement and a roofer was able to estimate the age of the roof.

The trial court relied on an unpublished decision,[3] which cited *Conahan v Fisher*, 186 Mich App 48; 463 NW2d 118 (1990). In *Conahan*, the plaintiff buyers sought damages from the defendant sellers for a termite infestation in a home that the plaintiffs bought "as is." The plaintiffs argued that there were genuine issues of material fact regarding the defendants' knowledge of the termite problem and their duty to disclose it to the plaintiffs. *Conahan*, 186 Mich App at 49. The plaintiffs viewed the home and had a professional inspection done, and they discovered no termites before the purchase. *Id*. at 50. However, a termite expert opined that a competent inspector should have discovered the termites. *Id*. Because the condition was not concealed, the defendants had no duty to disclose the termite problem, so this Court affirmed summary disposition in the defendants' favor. *Id*.

Plaintiff relies on another unpublished decision, as well as *Titan Ins Co v Hyten*, 491 Mich 547, 557; 817 NW2d 562 (2012), which held:

> although the doctrines of actionable fraud, innocent misrepresentation, and silent fraud each contain separate elements, none of these doctrines requires that the party asserting fraud prove that the fraud could not have been discovered through the exercise of reasonable diligence. Stated differently, these doctrines do not require the party asserting fraud to have performed an investigation of all assertions and representations made by its contracting partner as a prerequisite to establishing fraud.

The trial court agreed that under *Titan*, a party alleging fraud had no duty to investigate the alleged misrepresentations, but the *Titan* Court also held that a person could not " 'close his eyes to that which others clearly see.' " *Titan*, 491 Mich at 562, quoting *Keys v Pace*, 358 Mich 74, 84; 99 NW2d 547 (1959). Thus, the trial court determined that *Conahan* did not violate *Titan* because the *Conahan* Court did not obligate parties alleging fraud to investigate a representation. Rather, a party that chose to investigate by conducting an inspection will be imputed the knowledge of what a reasonably competent inspector should have discovered. The court determined that the record supported the conclusion that plaintiff's inspector should have discovered the mouse problem.

We disagree with the analysis of the trial court. *Conahan* involved a claim of fraudulent concealment, whereas the instant matter involves a claim of fraudulent misrepresentation. The holding in *Titan* that a party claiming fraud need not investigate a representation was extended to real estate transactions:

---

[3] Unpublished decisions are not binding under the rule of stare decisis. MCR 7.215(C)(1).

Defendants next rely on the general rule that there cannot be any fraud if the party allegedly defrauded had the means to determine for him- or herself the truth of the matter. Although defendants accurately state the general rule, it is not an absolute. As this Court has explained, that general rule is only applied when the plaintiffs "were either presented with the information and chose to ignore it or had some other indication that further inquiry was needed." Furthermore, it has long been the rule that, at least when a defrauded party troubled to examine some extrinsic evidence supporting a false statement, that party owes no duty to the defrauder to exercise diligence to uncover additional evidence disproving the defrauder's representations. [*Alfieri*, 295 Mich App at 194-194 (citations omitted).]

Plaintiff testified that it would have been impossible for the inspector to discover the defects and mouse infestation during the initial walkthroughs. Plaintiff explained that defendants had plastic sheeting covering the walls. Furthermore, the infestation was only discovered after plaintiff began removing insulation and drywall as part of an electrical upgrade process. The magnitude of the issue was only discovered once plaintiff hired a second inspector, who instructed him to cut out large pieces of drywall.

The trial court is correct in holding that plaintiff could not willfully ignore known facts, but incorrect in concluding that plaintiff was obligated to conduct destructive investigations into the veracity of defendants' representations. Whether the defects were reasonably discoverable upon inspection is irrelevant to plaintiff's claims for fraudulent misrepresentation and negligent misrepresentation.

## VI. CONCLUSION

We reverse the trial court's order granting summary disposition in favor of defendants and remand for further proceedings. We do not retain jurisdiction. Plaintiff, being the prevailing party, may tax costs. MCR 7.219(A).

/s/ Colleen A. O'Brien
/s/ Kathleen Jansen
/s/ Amy Ronayne Krause