NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0961n.06

No. 11-1777

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

NATIONAL CITY BANK,                                                )
                                                                   )
    Plaintiff-Appellee,                                        )
                                                                   )
v.                                                                 )
                                                                   )
SYATT REALTY GROUP, INC.; FAIRFIELD AND                            )
BANKS REAL ESTATE GROUP, LLC; FAIRFIELD                            )
AND BANKS FUND MANAGER, LLC; LISA WRIGHT,                          )
an individual; and DELBERT SAULTER, an individual,                 )  ON APPEAL FROM THE UNITED
jointly and severally,                                             )  STATES DISTRICT COURT FOR
                                                                   )  THE EASTERN DISTRICT OF
    Defendants,                                                )  MICHIGAN
                                                                   )
and                                                                )
                                                                   )  OPINION
GLEN WRIGHT, an individual,                                        )
                                                                   )
    Plaintiff-Appellant,                                       )
                                                                   )
                                                                   )
                                                                   )

Before:  COLE and DONALD, Circuit Judges; and SARGUS, District Judge.[*]

    **Donald, Circuit Judge.**  In 2005, Defendant-Appellant Glen Wright ("Wright") signed

documents to obtain a loan from Plaintiff-Appellee National City Bank ("NCB").  The proceeds of

_____

    [*]The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District
of Ohio, sitting by designation.

the loan were distributed to Wright,Syatt Realty Group, Inc. ("Syatt"), and Fairfield & Banks ("F&B")[1]—business entities associated with Wright and owned by his business associates Lisa Wright ("Lisa") and Delbert Saulter ("Saulter"). When the loan was not timely paid, NCB filed the present lawsuit against Wright, Lisa, Saulter, Syatt, and F&B. This appeal only concerns NCB's claims against Wright. NCB alleges that Wright made fraudulent and innocent misrepresentations about his personal finances in order to obtain the loan, that Wright was part of a civil conspiracy, and that Wright breached a promissory note. The district court granted summary judgment in favor of NCB on each of these claims, and Wright timely appealed. For the following reasons, we REVERSE the district court's orders granting summary judgment in favor of NCB and REMAND for further proceedings.

I.

Wright is a Tennessee financial planner who occasionally conducts business in Michigan. In 2005, Wright began investing in Michigan real estate with Lisa and Saulter. Lisa and Saulter formed Syatt to represent buyers and sellers of investment properties. Wright was not a formal partner in Syatt, but he did participate in some business ventures with it. F&B was formed as a real estate investment trust to pool funds from investors, buy properties, and then pay a return to investors from the gains realized by the real estate investments. Wright was not a principal, partner, or owner

---

[1]There are three F&B entities—Fairfield & Banks Real Estate Trust, L.L.C., Fairfield & Banks Real Estate Group, L.L.C., and Fairfield & Banks Fund Manager, L.L.C. The distinction between them is not relevant for purposes of this appeal; thus, we refer to them collectively as F&B.

in F&B; only Lisa and Saulter were. Wright's role was to introduce investors to investment opportunities with F&B, and he referred at least one client to invest in F&B.

In February 2005, Wright joined Lisa and Saulter (acting as Syatt) to purchase a house in Michigan (the "Avon property") and resell it for profit. Wright, Lisa, and Saulter planned to use Wright's credit profile, which was stronger than the credit profiles of Lisa, Saulter, and Syatt, to obtain a loan to purchase the Avon property, but no written agreement memorialized this plan. As part of the Avon property transaction, Wright gave a one-time power of attorney to Lisa so she could complete the loan documents and expedite the sale. Wright and Syatt were able to purchase the Avon property and flip it for a $10,000 profit. While Wright received $4,000 from the Avon property deal soon after it was completed, he claims that Lisa originally promised him approximately $20,000 more from the investment.

In June or July of 2005, Saulter learned of an opportunity to purchase a house in Michigan (the "Webber property") from a distressed owner. The owner was in financial straits and could no longer afford the mortgage, but apparently the value of the Webber property relative to the mortgage made assumption of the existing mortgage a profitable investment. Syatt thus agreed to assume the mortgage and provided a small kickback to the distressed sellers.

Around the same time, Wright, Lisa, and Saulter agreed to seek a line of credit in order to fund other business ventures. Lisa and Saulter assert that the loan was to be secured by another mortgage on the Webber property with the proceeds going to fund F&B. Because Wright had the

strongest credit profile, he, Lisa, and Saulter again planned to use his financial information to obtain the loan. Lisa and Saulter set up a loan with NCB banker Mark Clark ("Clark"), who was a friend of Saulter's. According to Wright, the loan was to be a personal line of credit that would be treated as a business line of credit so that it would not show up on Wright's credit report.

At some point during the summer of 2005, Wright went to Lisa's office and completed a series of NCB forms, which he thought was an NCB loan application. Wright signed a Personal Financial Statement, a Future Advance Mortgage, a Good Faith Estimate of Closing Costs, a Settlement Statement, a Notice of Right to Cancel, and a Fixed Rate Consumer Note and Security Agreement ("the Note"). According to Wright, these documents were blank when he signed them and he only saw the relevant signature pages. The completed Personal Financial Statement included false information about Wright's finances. At his deposition, Wright testified that he gave the blank documents to Lisa, that she had access to his accountant to obtain the proper information, and that she may have asked him some questions over the telephone, but Wright insists that he did not provide the false information that was included in the Personal Financial Statement.

The forms Wright signed were delivered to Clark, who forwarded them to NCB's main underwriting office in Cleveland, Ohio. The loan to Wright was conditionally approved subject to two conditions—that NCB take a second mortgage on the Webber property, which had been offered as collateral, and that the first mortgage on the Webber property not be greater than $293,000. The conditional approval was returned to Clark, but he did not ensure that the two conditions were met. In fact, the first mortgage on the Webber property was over $600,000, which violated the second

condition of approval. Nonetheless, on August 8, 2005, Clark disbursed the proceeds from the loan, via NCB cashier's checks, as follows: $20,000 to Wright, $130,000 to F&B, and $350,000 to Syatt. According to Clark, Wright approved this allocation of the proceeds, but Wright claims he did not.

On June 6, 2007, NCB filed a complaint against Wright, Lisa, Saulter, Syatt, and F&B, alleging claims of bank fraud/intentional and innocent misrepresentation, money had and received, payment by mistake, unjust enrichment, and civil conspiracy. NCB seeks damages of $540,000 plus attorney fees, interest, and costs. During discovery, Wright admitted that the documents submitted to NCB contained his signature, after which the district court granted NCB's motion to amend its complaint to add a claim for breach of promissory note. Wright and NCB each filed two motions for summary judgment on NCB's claims against Wright—one each for the claims raised in the original complaint and one each for the breach of promissory note claim. NCB also filed a motion to dismiss Wright's counterclaims. The district court granted NCB's motions for summary judgment and motion to dismiss and denied Wright's motion for summary judgment. On May 19, 2011, the district court granted NCB's motion to amend the judgment and awarded NCB $1,288,389.35, a total amount including principal, interest, and attorney fees, to which Wright was jointly and severally liable with Syatt and F&B. On June 15, 2011, Wright timely appealed.

II.

We review de novo the district court's grant of NCB's motions for summary judgment. *Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008). Summary judgment is appropriate where the

materials in the record show "that there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must

conclusively show that no genuine issue of material fact remains for trial. *Celotex Corp. v. Catrett*,

477 U.S. 317, 323 (1986). We must view all facts and inferences in the light most favorable to the

nonmoving party without making credibility determinations or weighing the evidence. *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

A.

The district court first granted summary judgment in favor of NCB on its claim for breach

of promissory note. NCB alleges that it loaned Wright $500,000 in exchange for the Note, which

promised payments to NCB in monthly installments. The Note contains an acceleration clause,

under which the entire Note would be due immediately and in full should Wright fail to make a

monthly payment. NCB insists that Wright failed to make the monthly payments, meaning the Note

is now payable immediately and in full. Wright denies these allegations.

The district court concluded that NCB was the holder of a valid promissory note. A

promissory note is a negotiable instrument pursuant to the Michigan Uniform Commercial Code

("MUCC"), which defines a negotiable instrument as

> an unconditional promise or order to pay a fixed amount of money, with or without
> interest or other charges described in the promise or order, if all of the following
> apply:

> (a) It is payable to bearer or to order at the time it is issued or first comes into possession of a holder.
>
> (b) It is payable on demand or at a definite time.
>
> (c) It does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain an undertaking or power to give, maintain, or protect collateral to secure payment, an authorization or power to the holder to confess judgment or realize on or dispose of collateral, or a waiver of the benefit of any law intended for the advantage or protection of an obligor.

Mich. Comp. Laws § 440.3104(1). A holder is "the person in possession if the instrument is payable to bearer or, in the case of an instrument payable to an identified person, if the identified person is in possession." *Id.* § 440.1201(20).

The Note is a negotiable instrument pursuant to § 440.3104(1). It is payable to the order of NCB. It is payable at a definite time—360 monthly payments. And, there are no undertakings or instructions except with regard to the use of mortgaged property as collateral. The acceleration clause in the Note does not destroy its negotiability. *See Northwestern Finance Co. v. Crouch*, 242 N.W. 771, 771 (Mich. 1932). Furthermore, NCB qualifies as a holder of the Note pursuant to § 440.1201(20) because the Note was made to the order of NCB and NCB possesses it.

The district court granted summary judgment in favor of NCB because it determined that NCB was entitled to enforce the Note. A holder of an instrument is entitled to enforce it. Mich. Comp. Laws § 440.3301. The MUCC provides that "[i]f the validity of signatures is admitted . . .[,] a plaintiff producing the instrument is entitled to payment if the plaintiff proves entitlement to

enforce the instrument under section 3301, unless the defendant proves a defense or claim in recoupment." *Id.* § 440.3308(2). Wright admits that he signed the Note; thus, there is no dispute as to the validity of the signatures. Instead, Wright offers two defenses against NCB's attempt to enforce the Note—that there was a failure to contract because there was no manifestation of intent between the parties and that NCB failed to perform a condition of the Note.

1.

Wright first argues that no contract was formed because NCB never approved the loan. NCB's Cleveland office placed conditions on the approval of the loan, and those conditions were not satisfied prior to the proceeds being disbursed. Thus, Wright avers, NCB did not manifest an intent to be bound by the loan/Note.

NCB's failure to follow its own internal procedures for approving a loan, however, does not represent a failure to contract. NCB agreed to the terms of the loan by disbursing the funds on it. Moreover, even if the funds were disbursed by an NCB employee who lacked the authority to approve the loan or disburse the funds, NCB ratified the agreement by seeking to enforce it. *See David v. Serges*, 129 N.W.2d 882, 883 (Mich. 1964). Therefore, there can be no dispute that NCB accepted the terms of the Note.

Wright insinuates that he did not agree to the terms of the contract because he signed blank documents that he thought were merely part of the application process rather than binding loan documents. Wright's acceptance of the terms of the Note also cannot be disputed. In signing the

Note, Wright assented to its terms and warranted that he had read the document. In a paragraph

immediately above the line for Wright's signature, the Note reads:

> YOU HAVE READ AND AGREE TO ALL PROVISIONS OF THIS NOTE
> INCLUDING THOSE ON PAGES 1 THROUGH 3 AND IN THE DISCLOSURE
> STATEMENT WHICH ARE INCORPORATED HEREIN BY REFERENCE. (1)
> DO NOT SIGN THE NOTE BEFORE YOU READ IT OR IF IT CONTAINS
> BLANK SPACES TO BE FILLED IN. (2) YOU ARE ENTITLED TO A
> COMPLETELY FILLED-IN COPY OF THIS NOTE BEFORE YOU SIGN IT. BY
> SIGNING THE NOTE, YOU ACKNOWLEDGE THAT YOU HAVE RECEIVED
> AND HAD AN OPPORTUNITY TO REVIEW A COMPLETED COPY OF THIS
> ENTIRE NOTE BEFORE SIGNING IT ON THE DATE SHOWN ON PAGE 1.
> SEE PAGES 1, 2 AND 3 AND THE DISCLOSURE STATEMENT FOR
> ADDITIONAL IMPORTANT TERMS AND CONDITIONS.

Wright's misunderstanding as to what he was signing and his failure to demand a completed copy

of the Note prior to signing do not obviate the validity of his signature or negate his acceptance of

the terms of the Note. Based on the clear language of the Note, there can be no factual dispute as

to Wright's acceptance of its terms.

Wright also argues that no agreement was made because NCB altered a loan document by

changing how the proceeds were to be distributed. A fraudulently made alteration to a negotiable

instrument may provide the party whose obligation is affected with a defense against enforcement.

Mich. Comp. Laws. § 440.3407(2). NCB admits that the Settlement Statement was altered to reflect

the allocation of the proceeds from the loan, but that alteration does not provide Wright a defense

to enforcement of the Note. The Settlement Statement is not part of the Note; thus, the alteration

is not a defense to enforcement pursuant to § 440.3407(2).

Wright does not have a defense against enforcement of the Note based on a failure to contract. There is no dispute of fact as to whether NCB or Wright assented to the terms of the Note. Furthermore, NCB did not fraudulently alter the Note. Wright's arguments otherwise are without merit.

2.

Wright also argues that the Note cannot be enforced because NCB did not fulfill a condition precedent by loaning Wright $500,000. The Note states that Wright gave a promise to pay in exchange for "value received" in the form of a loan and that Wright authorized NCB "to disburse all proceeds from this Loan as indicated in the Itemization of the Amount Financed in the Disclosure Statement." According to the Disclosure Statement, the value received by Wright was $500,000, an "[a]mount given to you directly." Wright claims NCB failed to loan all of the money to him.

The failure to properly distribute the proceeds of a loan can provide a defense against the enforcement of a negotiable instrument. "If an instrument is issued for a promise of performance, the issuer has a defense to the extent performance of the promise is due and the promise has not been performed." Mich. Comp. Laws § 440.3303(2). In other words, a lack of consideration is a defense available to the maker of an instrument. *EA Mgmt. v. JP Morgan Chase Bank, N.A.*, 655 F.3d 573, 576 (6th Cir. 2011). Moreover, "the right to enforce the obligation of a party to pay an instrument is subject to . . . [a] defense of the obligor stated in another section of this article." Mich. Comp. Laws § 440.3305(1)(b). Sections 440.3303(2) and 440.3305(1)(b) are part of the same article. *EA*

*Mgmt.*, 655 F.3d at 576. Therefore, NCB's failure to provide value to Wright pursuant to the Disclosure Statement would provide Wright with a defense against the enforcement of the Note by NCB.

A genuine dispute of fact exists as to whether NCB disbursed the proceeds of the loan pursuant to the Note—that is, directly to Wright. Only $20,000 of the $500,000 went directly to Wright in the form of a check made payable to him. Of the remaining $480,000, $350,000 went to Syatt and $130,000 went to F&B. Wright was not a formal owner, principal, or partner in either Syatt or F&B. While NCB suggests that Wright received subsequent payments from Syatt and F&B, those payments do not conclusively establish that the loan was disbursed directly to Wright. Moreover, Wright testified that he did not authorize the disbursements. Accordingly, a dispute of fact exists. The trier-of-fact must determine whether NCB satisfied the requirements of the Note by disbursing $480,000 of the $500,000 to recipients other than Wright personally. Summary judgment in favor of NCB on the claim for breach of promissory note, then, was inappropriate.

B.

NCB's Amended Complaint alleges that Wright provided false information in the documents he signed to obtain the loan, namely the Personal Financial Statement. Michigan law provides causes of action for fraudulent and innocent misrepresentations. NCB asserted claims under both theories, and the district court granted summary judgment in NCB's favor on both of them. Because

there are genuine disputes of fact as to an element of both misrepresentation claims, the district court erred in granting summary judgment.

To establish a claim of fraudulent misrepresentation, a plaintiff must prove that:

(1) defendant made a material representation; (2) the representation was false; (3) defendant knew, or should have known, that the representation was false when making it; (4) defendant made the representation with the intent that plaintiff rely on it; (5) and plaintiff acted on the representation, incurring damages as a result.

*Foreman v. Foreman*, 701 N.W.2d 167, 175 (Mich. Ct. App. 2005). As to innocent misrepresentation,

A claim . . . is shown where a party detrimentally relies on a false representation in such a manner that the injury inures to the benefit of the party making the misrepresentation. It is unnecessary to prove that the party making the representation had knowledge that it was false. But for liability under a theory of innocent misrepresentation to arise there must be privity of contract between the party making the representation and the party claiming to have detrimentally relied on it.

*Roberts v. Saffell*, 760 N.W.2d 715, 720 (Mich. Ct. App. 2008) (quotation marks and citations omitted). An innocent misrepresentation plaintiff "need not prove that the defendant intended to deceive the plaintiff into relying on the false or misleading misrepresentation." *Id.* Likewise, "false statements the claimant relied on are actionable irrespective of whether the person making them acted in good faith in making them." *Id.* (quotation marks and citations omitted).

A fundamental element of NCB's claims for fraudulent misrepresentation and innocent misrepresentation is that Wright made a representation to NCB. While Wright admits that the

Personal Financial Statement submitted to NCB contained misrepresentations regarding his assets and liabilities, he insists that the document was blank when he signed it. Wright further testified during his deposition that he did not complete the Personal Financial Statement, that he did not provide the information included in it to anyone to complete on his behalf, and that whoever completed the Personal Financial Statement made up the information included in it. Wright's testimony creates a genuine dispute of fact as to whether he made a representation to NCB, which is a material element of both fraudulent and innocent misrepresentation claims. Because a genuine dispute of material fact exists, summary judgment was improper. The trier-of-fact must determine whether Wright's testimony is credible, and that determination is more appropriately made after a fair presentation of the evidence at trial rather than during the summary judgment phase of litigation.

C.

NCB's final claim against Wright is that he engaged in a civil conspiracy with Lisa and Saulter, which is actionable under Michigan law. According to NCB, Wright, Lisa, and Saulter engaged in a concerted action to obtain an unlawful mortgage loan from NCB. The district court agreed and granted summary judgment in favor of NCB. Because a genuine dispute of fact exists as to what Wright, Lisa, and Saulter agreed to do, summary judgment on this claim was not proper.

"A civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Admiral Ins. Co. v. Columbia Cas. Ins. Co.*, 486 N.W.2d 351, 358 (Mich. Ct.

App. 1992). "[A] claim for civil conspiracy may not exist in the air; rather, it is necessary to prove a separate, actionable, tort." *Early Detection Center, PC, v. New York Life Ins. Co.*, 403 N.W.2d 830, 836 (Mich. Ct. App. 1986).

Civil conspiracy requires proof that the defendant conspired for an unlawful purpose or conspired to use unlawful means. There appears to be no dispute that Wright, Lisa, and Saulter agreed to have Wright apply for a line of credit from NCB and to use the proceeds to fund their real estate ventures. But this is not an unlawful purpose, and NCB has not offered proof that they agreed to use unlawful means to obtain the loan. Wright testified that he signed blank documents, that he did not provide false information, that he, Lisa, and Saulter were trying to get a line of credit to fund future ventures, and that he was not aware of the property that would be used as collateral for the line of credit. Thus, a genuine dispute of material fact exists as to whether the agreement amongst Wright, Lisa, and Saulter was for an unlawful purpose or to use unlawful means.

The district court noted that "[o]nce the parties to a conspiracy have agreed to conspire, all acts done in furtherance of the conspiracy by one of the conspirators 'is to be considered as the act of all, and all are liable irrespective of the fact that they did not actively participate therein or the extent to which they benefitted thereby.'" (quoting *Warsop v. Cole*, 291 N.W. 33, 36 (Mich. 1940)). The district court's insinuation here is that because someone (either Lisa, Saulter, or Wright) included false information in the documents submitted to NCB then that unlawful act can be attributed to each of the conspirators. The fact that someone included false information, however, does not establish that the conspiracy was for an unlawful purpose or that Wright, Lisa, and Saulter

- 14 -

conspired to use unlawful means. The unlawful act of one co-conspirator is relevant only if the unlawfulness was part of the conspiracy as an agreed-upon purpose or means. Because there is a genuine dispute as to what Wright, Lisa, and Saulter agreed to do and how they agreed to do it, summary judgment in favor of NCB was inappropriate on the civil conspiracy claim.

## III.

For these reasons, we REVERSE the district court's grant of summary judgment in favor of NCB as to NCB's claims against Wright for breach of promissory note, fraudulent and innocent misrepresentation, and civil conspiracy, and we REMAND for further proceedings.