*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ANDREW S. ROSKAMP,

        Plaintiff-Appellee/Cross-Appellee,

v

FREMONT INSURANCE CO.,

        Defendant/Cross-Defendant-
        Appellant/Cross-Appellee,

and

ALLSTATE INSURANCE CO.,

        Defendant/Cross-Plaintiff-
        Appellee/Cross-Appellant.

UNPUBLISHED
March 18, 2021

No. 348054
Isabella Circuit Court
LC No. 17-014110-NF

Before: BOONSTRA, P.J., and GADOLA and TUKEL, JJ.

PER CURIAM.

Defendant, Fremont Insurance Company (Fremont), appeals by leave granted the order of the trial court granting defendant, Allstate Insurance Company (Allstate), summary disposition under MCR 2.116(C)(10) in the parties' priority dispute under the no-fault act, MCL 500.3101 *et seq.*, and denying Fremont's motion for summary disposition under that same court rule. On cross-appeal, Allstate appeals the same order of the trial court, challenging the trial court's denial of its motion for partial summary disposition under MCR 2.116(C)(10) of plaintiff Andrew Roskamp's claim of entitlement to work-loss benefits. We affirm in part, reverse in part, and remand for further proceedings.

## I. FACTS

This is an action for first-party no-fault benefits brought by Roskamp against Fremont and Allstate. On November 7, 2016, Roskamp was injured in a motor vehicle accident while driving

a 2016 Ford F-150 pickup truck leased by his then-girlfriend, Shannon Dexter, who was insured under a policy of no-fault insurance issued to her by Fremont.

Dexter initially applied for no-fault insurance from Fremont in December 2015. Her application listed a 2015 Ford Explorer and a 2001 Layton Travel Trailer as vehicles in her household, and listed Dexter as the sole driver of the vehicles. In January 2016, Dexter added a 2010 Ford Focus to the policy, indicating that the car was driven by her daughter. After Dexter's daughter was involved in an accident in April 2016, Fremont advised Dexter that all drivers in Dexter's household must be listed on the policy. Dexter thereafter added her daughter to the policy.

In March or April 2016, Roskamp moved in with Dexter. In April 2016, Dexter added to the no-fault policy a 2016 Ford F-150 pick-up truck, leased in her name, representing to Fremont in her application that she was the primary driver of the truck. Dexter did not request to add Roskamp to her no-fault policy and did not inform Fremont that Roskamp was an additional driver living in her household. In August 2016, Dexter added Roskamp's 2002 Ford F-150 pick-up truck to her no-fault policy, but did not disclose that this vehicle was owned by Roskamp. Dexter represented to Fremont that the 2002 Ford F-150 pick-up was driven by her daughter. Again, Dexter did not inform Fremont that Roskamp was a driver living in her household.

Dexter's daughter later testified that she did not drive Roskamp's 2002 F-150 pick-up truck. Roskamp testified that the reason Dexter added his 2002 F-150 pick-up to her policy and claimed that her daughter was the driver of that vehicle was because his driving record would make the cost of insurance prohibitive if he were revealed to be the owner and driver of the vehicle. Roskamp also testified that he drove Dexter's leased 2016 Ford F-150 pick-up only when the couple was together, but his co-workers testified that he regularly drove that vehicle to work. At the time of the accident on November 7, 2016, Roskamp was driving Dexter's leased 2016 Ford F-150. Roskamp sustained significant injuries, including a traumatic brain injury.

Upon investigation of the accident, Fremont discovered that Roskamp, who had a poor driving record that included a prior suspension of his driver's license, was a member of Dexter's household and was regularly driving Dexter's vehicles. On November 14, 2016, Fremont notified Dexter that it would not be renewing her no-fault policy after the policy term ended in December 2016. After further investigation, in March 2017, Fremont informed Dexter that it was rescinding the no-fault policy, citing Dexter's material misrepresentation of not advising Fremont that Roskamp, whose driving record made him ineligible for coverage with Fremont, was a driver in her household. Fremont returned the policy premium to Dexter, who cashed the check and reportedly gave the funds to her attorney to hold. Allstate was then assigned Roskamp's claim by the Michigan Assigned Claims Plan.

Roskamp initiated this action against Fremont seeking personal protection insurance (PIP) benefits. Roskamp alleged that he was insured under the policy issued by Fremont to Dexter, claimed that Fremont had improperly rescinded the policy, and sought declaratory judgment that the rescission was unlawful. Roskamp thereafter amended his complaint, adding Allstate as a defendant. Allstate cross-claimed against Fremont, claiming that Fremont was higher in priority under the no-fault act and therefore liable for PIP benefits to Roskamp. Allstate moved for summary disposition under MCR 2.116(C)(10), challenging the validity of Fremont's rescission

of its no-fault policy and asserting that Fremont was the highest priority insurer under MCL 500.3114. Fremont moved for summary disposition under MCR 2.116(C)(10) and MCR 2.116(I)(2), arguing that rescission of its policy placed Allstate in first priority. Allstate, joined by Fremont, also sought partial summary disposition under MCR 2.116(C)(10) of Roskamp's claim for work-loss benefits.

Following a hearing, the trial court held that Fremont waived its right to seek rescission of its policy by issuing Dexter a notice of nonrenewal of the policy. The trial court held that Fremont therefore was the higher priority insurer, and ordered Fremont to reimburse Allstate for any PIP benefits paid by Allstate on Roskamp's behalf. The trial court denied the insurers' motion for summary disposition regarding Roskamp's claim for work-loss benefits, holding that genuine issues of material fact existed regarding whether Roskamp was temporarily unemployed under MCL 500.3107a at the time of the accident. Fremont now appeals the order of the trial court upon leave granted by this Court,[1] and Allstate cross-appeals.

## II. DISCUSSION

## A. STANDARD OF REVIEW

We review de novo a trial court's decision to grant or deny summary disposition. *Meemic Ins Co v Fortson*, 506 Mich 287, 296; ___ NW2d ___ (2020). A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a claim. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). When reviewing an order granting summary disposition under MCR 2.116(C)(10), this Court considers all documentary evidence submitted by the parties in the light most favorable to the nonmoving party. *Id*. Summary disposition under MCR 2.116(C)(10) is warranted when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Id*. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Johnson v Vanderkooi*, 502 Mich 751, 761; 918 NW2d 785 (2018) (quotation marks and citations omitted).

We also review de novo issues involving the interpretation of statutes and of contracts. *Titan Ins Co v Hyten*, 491 Mich 547, 553; 817 NW2d 562 (2012). However, equitable relief, including rescission, is granted only in "the sound discretion of the trial court." *Bazzi v Sentinel Ins Co*, 502 Mich 390, 409; 919 NW2d 20 (2018). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes, or if the trial court makes an error of law. *Pioneer State Mut Ins Co v Wright*, 331 Mich App 396, 405; 952 NW2d 586 (2020).

## B. RESCISSION

Fremont contends that the trial court erred by granting Allstate summary disposition, determining that Fremont could not rescind Dexter's no-fault policy after issuing Dexter a notice

---

[1] *Roskamp v Fremont Ins Co*, unpublished order of the Court of Appeals, entered August 14, 2019 (Docket No. 348054).

of nonrenewal of the policy. Fremont contends that the notice of nonrenewal did not bar its ability to seek rescission of the policy. We agree.

An insurance policy is a contract; the principles of construction that apply to contracts generally also apply to insurance policies. *Meemic Ins Co*, 506 Mich at 296-297. As with any other contract, "[a]ny clause in an insurance policy is valid as long as it is clear, unambiguous and not in contravention of public policy." *Id*. at 297, quoting *Farm Bureau Mut Ins Co of Mich v Nikkel*, 460 Mich 558, 568; 596 NW2d 915 (1999).

In Michigan, no-fault insurance policies are governed by both the statutory provisions of the no-fault act and the common law applicable to contracts. *Bazzi*, 502 Mich at 399. The no-fault act governs the coverage mandated by the act, and the insurance policy governs optional coverages not mandated by the act. *Meemic Ins Co*, 506 Mich at 297-298. An automobile insurance policy is subject to common-law contract defenses that may be invoked to avoid enforcement of the policy unless those defenses are prohibited by statute. *Bazzi*, 502 Mich at 399-400. The no-fault act does not prohibit an insurer from invoking the common-law defense of fraud, nor does it limit the remedy of rescission. *Id*. An insurer may raise the common law defense of fraud in the procurement of the policy as a defense to a claim for coverage mandated by the no-fault act, *Meemeic Ins Co*, 506 Mich at 300, and the no-fault act does not preclude an insurer from rescinding a policy on the basis of fraud. *Bazzi*, 502 Mich at 401.

Michigan contract law recognizes different common law fraud doctrines, namely, fraudulent misrepresentation, silent fraud, and innocent misrepresentation, that may entitle a party to a legal or equitable remedy. *Titan*, 491 Mich at 555. To establish fraudulent misrepresentation, the plaintiff must show that (1) the defendant made a material representation, (2) it was false, (3) when the defendant made the representation, the defendant knew it was false, or made it recklessly, without knowledge of its truth and as a positive assertion, (4) the defendant made the representation intending the plaintiff to act upon it, (5) the plaintiff acted in reliance upon it, and (6) the plaintiff suffered damage as a result. *Id*. A misrepresentation is material when an insurer would not have issued a policy in the manner or at the rate at which it was issued if the misrepresentation or nondisclosed fact had been known to the insurer. See *Oade v Jackson Nat'l Life Ins Co of Mich*, 465 Mich 244, 253-254; 632 NW2d 126 (2001). An insurer's statement that it would not have issued a policy if it had known the previously undisclosed information is sufficient to establish materiality. See *Lash v Allstate Ins Co*, 210 Mich App 98, 103-104; 532 NW2d 869 (1995).

Silent fraud, also known as fraudulent concealment, requires that (1) the defendant suppressed a material fact, (2) the defendant had the duty to disclose the fact, and (3) the plaintiff relied to his or her detriment. *Alfieri v Bertorelli*, 295 Mich App 189, 193; 813 NW2d 772 (2012). A person may be guilty of fraudulent concealment if he or she "remains silent when fair dealing requires him [or her] to speak." *US Fidelity & Guaranty Co v Black*, 412 Mich 99, 127; 313 NW2d 77 (1981). Innocent misrepresentation does not require that the defendant knew or should have known that the representation was false. *Roberts v Saffell*, 280 Mich App 397, 405; 760 NW2d 715 (2008). Rather, under a theory of innocent misrepresentation false statements relied upon by the claimant are actionable regardless of whether the person making the statements acted in good faith. *Id*.

-4-

This Court has stated that "[r]escission is justified without regard to the intentional nature of the misrepresentation, as long as it is relied upon by the insurer. Reliance may exist when the misrepresentation relates to the insurer's guidelines for determining eligibility for coverage." *21st Century Premier Ins Co v Zufelt*, 315 Mich App 437, 446; 889 NW2d 759 (2016) (quotation marks and citation omitted). In addition, insurers have no duty to investigate fraud in an application for insurance. *Titan Ins Co*, 491 Mich at 570. We observe, however, that although an insurer may have a right to seek rescission of a no-fault insurance policy, an insurer is not automatically entitled to rescission. *Mendelson Orthopedics PC v Everest Nat'l Ins Co*, 328 Mich App 450, 459-460; 938 NW2d 739 (2019). Rather, because rescission is equitable in nature, the trial court generally must balance the equities to determine whether the party is entitled to rescission. *Id*. at 461.

We observe, without determining, that in this case the record suggests that Dexter made material misrepresentations in her application for insurance. The parties do not dispute that Roskamp moved in with Dexter in March or April 2016, and was living with Dexter at the time of the accident on November 7, 2016. Shortly after Roskamp moved in with Dexter, Dexter leased the 2016 Ford F-150 pick-up truck in her name, and added the vehicle to her policy with Fremont, indicating that she was the driver of the vehicle. Dexter did not add Roskamp to her no-fault policy and did not inform Fremont that Roskamp was an additional driver living in her household. In August 2016, Dexter added Roskamp's 2002 Ford F-150 pick-up truck to her no-fault policy, but did not disclose that this vehicle was owned by Roskamp. Again, Dexter did not inform Fremont that Roskamp was a driver living in her household. Roskamp testified that the reason Dexter added his 2002 F-150 pick-up to her policy and claimed that she was the driver of that vehicle was because his driving record would make the cost of insurance prohibitive if he were revealed to be the owner and driver of the vehicle.

The trial court, however, determined that regardless of Dexter's alleged misrepresentations, Fremont was not entitled to rescind the policy because Fremont waived its right to seek recession of Dexter's policy by first notifying her that the policy would not be renewed. Relying upon this Court's decision in *Burton v Wolverine Mut Ins Co*, 213 Mich App 514; 540 NW2d 480 (1995), the trial court reasoned:

> When Fremont became aware that plaintiff's driving record was not acceptable and the plaintiff had been residing in [Dexter's] household and using the insured vehicles without these facts being disclosed to Fremont, Fremont chose to cancel [Dexter's] policy. Nearly 4 months later, as it became clear how seriously injured plaintiff was, Fremont decided to rescind [Dexter's] policy. The only reasons for rescission were known to Fremont on November 8, 2016, the day after the subject motor vehicle accident. . . .
>
> In *Burton v Wolverine Mut Ins Co*, 213 Mich App 514[; 540 NW2d 480] (1995), the Michigan Court of Appeals held that once an insurance carrier has elected the remedy of cancellation, it cannot later seek to rescind the policy. . . .
>
> Fremont argues that *Burton* does not apply to the case at bar because Fremont did not issue a cancellation of [Dexter's] policy but instead issued a non-renewal. [Dexter's] policy would have been up for renewal on December 17, 2016 and so Fremont argues that the November 14, 2016 letter did not cancel the policy but

-5-

simply indicated that it would not be renewed. However, Fremont representatives Nancy Decker and LouAnn Nicholas testified that the effect of cancellation and [non]renewal is identical. . . . The only difference is that a cancellation ends coverage prior to the expiration date of the policy and a non-renewal ends coverage at the expiration date of the policy. There is a clear public policy reason supporting the result in *Burton* which has the same effect whether there is a cancellation or a non-renewal. No-fault insurance is required in Michigan in order to recover no-fault benefits, but there are also criminal penalties for operating a motor vehicle without insurance. Clearly it is very important to have certainty regarding whether or not you are actually insured at any given time. When an insurance company sends a letter stating your insurance is effective through a certain date, you should have certainly that you are insured until that date and that you do not have to go and obtain alternative insurance.

We disagree that *Burton* precludes Fremont from seeking rescission in this case. In *Burton*, this Court considered the defendant insurer's right to rescind a no-fault policy on the basis of fraud in the procurement of the policy after the insurer issued a notice of cancellation to the insured. After discovering that the plaintiff, Piere Burton, had misrepresented his driving record on the insurance application, the defendant insurer sent him a notice of cancellation on October 27, 1986, informing him that the policy would be cancelled as of November 17, 1986. On November 8, 1986, the plaintiff Paula Burton was injured in a motor vehicle collision. After the insurer learned of the claim, it rescinded the no-fault policy on the basis of the misrepresentation in the procurement of the policy, effective October 14, 1986. This Court held that the insurer waived its right of rescission, reasoning:

> While we certainly do not wish to reward plaintiffs for the misrepresentation in the application for insurance, it was defendant who chose the remedy. We would not interfere with defendant's right to rescind the policy *ab initio* had it chosen to do so upon discovery of the material misrepresentation, regardless of whether that discovery occurred before or after the loss. However, in the case at bar, defendant did discover the misrepresentation before the loss and chose to issue a cancellation rather than a rescission.

> In drawing this distinction, it is important to consider the effects of defendant's choice to issue a cancellation. First, defendant induced plaintiffs to believe that they would have insurance until the effective date of the cancellation. Indeed, the cancellation notice specifically informed plaintiffs that their insurance would cease at the hour and date mentioned at the top of the notice, namely, 12:01 a.m. on November 17, 1986, a date approximately three weeks in the future. Thus, plaintiffs had no reason to act immediately to replace their insurance coverage, to cease driving until coverage could be obtained, or to do anything else immediately, as long as they eventually obtained coverage before November 17. Simply put, plaintiffs had no reason necessarily to have obtained replacement coverage at the time of the accident in the case at bar, the notice of cancellation having specifically told them that they would have coverage for more than an additional week after the accident occurred. [*Burton*, 231 Mich App at 517-518.]

This Court observed that the defendant insurer chose to cover the risk until November 17, 1986, and to keep the insurance premium that had been paid. *Id*. at 519. This Court noted that the insurer sought "to have the right to collect a premium and provide coverage as long as there are no losses and yet remain entitled to choose rescission and deny coverage if a loss occurs." *Id*. at 519-520.

The present case is factually and legally distinguishable from *Burton*. Unlike the no-fault insurer in *Burton*, Fremont did not induce Dexter to believe, with the notice of non-renewal, that she had no-fault insurance until a certain date, then rescind the policy following a high-exposure accident occurring within that coverage period. Rather, *after* Roskamp was injured in the collision and Fremont learned that Roskamp lived in Dexter's household and had a bad driving record, Fremont informed Dexter that her policy would not be renewed. Upon further investigation, including conducting examinations under oath (EUOs) of both Dexter and Roskamp, Fremont determined to seek rescission of the policy and refunded the premium to Dexter.

In *Burton*, the insurer learned of the misrepresentation, agreed to continue coverage until a certain cancellation date, then attempted to rescind the policy after an accident occurred during the coverage period before the cancellation date. The concern motivating this Court's decision in *Burton*, that the no-fault insurer had discovered a material misrepresentation in the procurement of the policy, informed the policy holder that it would bear the risk until a certain date, but then rescinded the policy following a high-exposure accident, is not present here. Here, not until after Roskamp's accident did Fremont learn of Dexter's misrepresentations in procuring the policy; Fremont advised her that they would not renew her policy, and upon further investigation determined to seek rescission in light of Dexter's misrepresentations. Dexter was not induced to rely on the coverage of Fremont's policy by the notice of nonrenewal at the time of the accident; rather, the accident had already occurred at the time Fremont decided not to renew her policy.[2]

In addition, we disagree that public policy necessarily dictates against rescission in this case. The trial court accurately observed that it is important to have appropriate no-fault insurance coverage and important for the insured to have certainty about the dates of that coverage. In this case, Fremont's actions did not create uncertainty for the policyholder regarding coverage. In *Burton*, at the time of the accident, the insurer's action of cancelling the policy may have caused the policyholders to believe they had coverage because the cancellation date had not yet occurred. Thus, the policyholder in *Burton* may have chosen not to obtain other insurance at the time of the accident, believing that coverage existed under the policy until the cancellation date. Here, Fremont's decision to not renew Dexter's policy occurred *after* Roskamp's accident. It is not the

_____

[2] We also reject Allstate's suggestion that *Kirschner v Process Design Assoc, Inc*, 459 Mich 587; 592 NW2d 707 (1999), precludes Fremont from rescinding Dexter's no-fault policy. In *Kirschner*, the Court stated that "[g]enerally, once an insurance company has denied coverage to an insured and stated its defenses, the insurance company has waived or is estopped from raising new defenses." *Id.* at 593. In this case, however, Fremont did not deny coverage; instead, it stated that Dexter's policy would not be renewed in December 2016, then commenced a more thorough investigation before determining to seek rescission of the policy.

case that Fremont's decision to not renew the policy created reliance by Dexter or Roskamp on that policy at the time of the accident.

Moreover, although it is important to have appropriate insurance coverage and important for the insured to have certainty about the dates of that coverage, those considerations alone do not warrant a finding of coverage that does not otherwise exist. An insurance policy, like other contracts, is an agreement between parties. *Farm Bureau Ins Co v TNT Equipment, Inc*, 328 Mich App 667, 672-673; 939 NW2d 738 (2019). Our Supreme Court has observed that "it is impossible to hold an insurance company liable for risk it did not assume." *Hunt v Drielick*, 496 Mich 366, 373; 852 NW2d 562 (2014) (quotation marks, citation, and brackets omitted). We also observe that the primary goal when interpreting an insurance policy is to honor the intent of the parties to that policy. *Tenneco, Inc v Amerisure Mut Ins Co*, 281 Mich App 429, 444; 761 NW2d 846 (2008).

We thus conclude that Fremont was not precluded from seeking rescission of the no-fault policy issued to Dexter merely because it first advised Dexter that it would not renew her policy. However, whether Fremont in this case otherwise should be permitted by the trial court to rescind the policy was not resolved by the trial court. In *Meemic Ins Co*, our Supreme Court considered whether an antifraud provision in a no-fault policy, asserted as a contractual defense to providing mandatory coverage under the no-fault act, is valid in the context of mandatory coverage required by the no-fault act. The Court held that "such contractual provisions are valid when based on a defense to mandatory coverage provided in the no-fault act itself or on a common-law defense that has not been abrogated by the act." *Meemic Ins Co*, 506 Mich at 293.

In this case, Fremont asserts that Dexter obtained no-fault insurance from Fremont by intentionally withholding information that would have caused Fremont to decline to issue her a policy, and that Roskamp was aware that he was unlikely to be able to obtain insurance, and thus chose to rely on Dexter's policy, knowing that Fremont had not been informed that he was a driver in Dexter's household. Fremont thus sought rescission of Dexter's policy based on fraud in the procurement of the policy. Such a defense generally is a contract-based defense that has not been abrogated by the no-fault act, and thus would allow for rescission. See *Bazzi*, 502 Mich at 406. This issue has not yet been determined by the trial court, however.

Moreover, it is unclear from the record whether Fremont's assertion of entitlement to rescind the policy is based upon the language of its policy, such as an antifraud provision in the policy. Our review of the record does not reveal that Fremont provided a copy of its insurance policy to the trial court, thereby inhibiting review of the terms of the policy, if indeed that is the basis of its claim to entitlement to rescission. In any event, whether the terms of the policy support Fremont's effort to rescind the policy is a question best determined by the trial court in the first instance. See *Jawad A. Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182, 210; 920 NW2d 148 (2018). We therefore remand this case to the trial court for determination in the first instance whether Dexter engaged in fraud or misrepresentation that would support rescission of the policy, and if so, whether Fremont is entitled to rescind its policy.

C. WORK-LOSS BENEFITS

On cross-appeal, Allstate contends that the trial court erred by ruling that there were genuine issues of material fact regarding whether Roskamp was "temporarily unemployed" under

-8-

MCL 500.3107, thereby making him eligible for work-loss benefits. We disagree. At the time the trial court decided Allstate's motion for partial summary disposition, MCL 500.3107[3] provided, in pertinent part:

> (1) Except as provided in subsection (2), personal protection insurance benefits are payable for the following:
>
> * * *
>
> (b) Work loss consisting of loss of income from work an injured person would have performed during the first 3 years after the date of the accident if he or she had not been injured. . . .

MCL 500.3107a provides:

> Subject to the provisions of [MCL 500.3107(1)(b)] work loss for an injured person who is temporarily unemployed at the time of the accident or during the period of disability shall be based on earned income for the last month employed full time preceding the accident.

In *Frazier v Allstate Ins Co*, 231 Mich App 172, 176; 585 NW2d 365 (1998), this Court explained that a person may be "temporarily unemployed" if he or she demonstrates that at the time of the accident he or she was "actively seeking employment and there is evidence showing the unemployed status would not have been permanent if the injury had not occurred."

In this case, the record suggests that Roskamp was employed in the month preceding the accident, and he presented evidence that he was actively seeking employment at the time of the accident. For example, Roskamp testified at his EUO that he and Dexter's father had discussed him working for the father's company, and Dexter testified that Roskamp had participated in job interviews after he left his previous employment. The evidence, viewed most favorably to Roskamp, was sufficient to establish a genuine issue of material fact concerning whether Roskamp was temporarily unemployed under the statute. The trial court therefore did not err by denying Allstate's motion for partial summary disposition regarding work-loss benefits.

### D. CONSTRUCTIVE OWNERSHIP/FRAUDULENT INSURANCE ACT

On cross-appeal, Allstate also argues that Roskamp's use of Dexter's 2016 Ford F-150 pick-up truck made him a constructive owner of the vehicle, and because Roskamp did not secure insurance on the vehicle, he is disqualified from recovering no-fault benefits under MCL 500.3113(b). Although both Allstate and Fremont raised this issue in their motions for summary disposition, the trial court did not reach this issue, resolving the case instead on the basis that Fremont was the higher priority insurer. We therefore decline to consider the constructive ownership issue in this appeal, which is best resolved in the first instance by the trial court should

---

[3] This statute was amended by 2019 PA 21, effective June 11, 2019. The amended statute is not relevant to this appeal.

that issue become relevant on remand. See *Shah*, 324 Mich App at 210. We also decline to consider Allstate's contention on cross-appeal that Roskamp is not eligible to receive PIP benefits under MCL 500.3173a(2) because his claim for benefits is supported by a fraudulent insurance act; that issue was not raised before and decided by the trial court, and therefore is not properly before this Court.

The trial court's order denying Allstate partial summary disposition regarding Roskamp's claim for work-loss benefits on the basis that a genuine issue of material fact exists is affirmed. The trial court's order granting Allstate's motion for summary disposition on the basis that Fremont is precluded from seeking rescission is reversed. We remand to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Michael F. Gadola
/s/ Jonathan Tukel