*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

NICOLE L. SMITH,

       Plaintiff-Appellant,

v

THELMA L. FORREST,

       Defendant-Appellee.

UNPUBLISHED
January 4, 2024

No. 365099
Wayne Circuit Court
LC No. 18-007081-CB

Before: JANSEN, P.J., and CAVANAGH and GADOLA, JJ.

PER CURIAM.

Plaintiff appeals as of right the order granting summary disposition to defendant under MCR 2.116(C)(7) (claim disposed by prior release), MCR 2.116(C)(8) (failure to state a claim on which relief can be granted), and MCR 2.116(C)(10) (no genuine issue of material fact), in this dispute between attorneys regarding buyout of an interest in a law practice. On appeal, plaintiff argues the trial court erred in granting summary disposition because: (1) she alleged independent claims for breach of contract, fraud, and breach of fiduciary duty; (2) the Confidential Settlement Agreement (CSA) between the parties was invalid because it was procured by defendant's fraudulent omissions concerning the value of the firm; (3) the CSA was invalid because defendant breached her fiduciary duty to plaintiff during its negotiation; and (4) the release contained in the CSA does not waive plaintiff's claim for damages because the release was obtained by fraud. We reverse and remand.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In September 2000, plaintiff joined defendant's law firm. This firm was located at a property owned by a separate property management business owned by defendant and her husband. In September 2005, plaintiff and defendant became equal partners in the law firm, which was renamed Forrest & Smith, PC (the firm).

In December 2010 defendant left the firm to accept public employment. The parties reached a verbal agreement detailing how plaintiff would buy out defendant's share of the firm, and plaintiff continued to practice at the firm's office location, paying rent to defendant. After

-1-

approximately two years, plaintiff believed she had met the terms of the verbal agreement and was entitled to sole ownership of the firm.

By February 2013 plaintiff had vacated the firm office space and continued her legal practice in a new partnership. In April 2013 defendant's property management business sold the firm location property to Scott Longton and his wife, and Longton's law firm, Longton Law Offices, PLLC (the Longton firm), began using the location for its practice in June 2013. A month later, defendant e-mailed Longton client lists accumulated from the Forrest & Smith firm's practice. About this time defendant also agreed to allow Longton to use her name as "of counsel" and to include that information on the Longton firm website. For at least some of the time between February 2014 and March 2016, the Longton firm website listed defendant as "of-counsel," stating: "Longton Law Offices, PLLC is pleased to announce that Thelma Forrest of Forrest & Associates is now of-counsel to Longton Law Offices, PLLC. Ms. Forrest and Mr. Longton will be working side by side to provide clients with unparalleled representation."

A dispute arose between the parties beginning in 2013, around the time plaintiff: (1) informed defendant she was moving out of the firm office space and starting a new partnership, and (2) simultaneously claimed she had met the terms of the verbal agreement and was entitled to sole ownership of the firm, which she intended to dissolve. Defendant did not agree plaintiff met the terms of the verbal agreement, and contended she was not yet obligated to transfer her full share of ownership of the firm to plaintiff. On December 12, 2013, the parties participated in a facilitated negotiation of the dispute. Each party was represented by counsel.

The resulting CSA stated, in pertinent part:

WHEREAS the two principals are former law partners in the Trenton, Michigan law practice of Forrest & Smith, PC;

WHEREAS this corporation has been, or if not, shall be dissolved by 12/31/2013;

WHEREAS to avoid any and all present or future disputes, end present threats of litigation or claims of any kind arising from the professional association or the termination of that business;

WHEREAS each party agrees that they have compromised their respective claims following a facilitation conducted by Judge Richard C. Kaufman held on the 12th day of December 2013.

NOW THEREFORE for good and valuable consideration, the receipt of which is sufficient to support this Confidential Settlement Agreement, the parties further agree:

* * *

2. That Thelma Forrest will accept from Nicole Smith as final and complete compensation to buy out her 50% share in the former law firm Forrest & Smith, PC:

-2-

　　　　a. $25,000 . . . .

　　　　b. The accounts receivables remaining with Ms. Smith that were previously requested by Ms. Forrest . . . .

* * *

3. Each party releases the other for all time with respect to any claim they have or could have asserted for any event occurring before the effective date of this Confidential Settlement Agreement.

The next day, a certificate of dissolution of the firm was submitted to the Michigan Department of Labor and Economic Growth, though the dissolution was not effectuated until five months later.

Over four years later plaintiff filed a complaint, alleging defendant's transfer of the client list to Longton, and arrangement to serve as "of counsel" to the Longton law firm, diluted the value of the parties' firm. Plaintiff claimed defendant committed fraud by omitting these facts and misrepresenting the value of the firm during negotiation of the CSA. Plaintiff also claimed breach of fiduciary duty on the basis of the same allegations.

In lieu of an answer, defendant moved for summary disposition under MCR 2.116(C)(8) and MCR 2.116(C)(10). Defendant argued plaintiff's claims were barred by the release contained in the CSA. Further, defendant argued the facts plaintiff alleged defendant concealed were readily ascertainable and not material. Plaintiff responded, arguing her claims were valid challenges to the CSA and there existed genuine issues of material fact regarding her claims, making summary disposition improper.

The trial court granted summary disposition, finding because the CSA was an "other proceeding" under MCR 2.612(C), and not a separate contract, that rule enacted a limitation of one year for seeking relief on the basis of fraud, misrepresentation, or misconduct. Because of this, the trial court found the "plain language of the [CSA] release includes and releases the conduct plaintiff complains of."

Plaintiff appealed and this Court reversed, finding MCR 2.612 had no application to plaintiff's claims. *Smith v Forrest*, unpublished per curiam opinion of the Court of Appeals, issued June 30, 2020, (Docket No. 349810), p 1. This Court noted the trial court's finding the release barred plaintiff's claims was "extremely cursory," and failed "entirely to address any of plaintiff's arguments that the release was unenforceable." *Id*. at 2, 4 n 4. This Court remanded "for the trial court to entertain and resolve the arguments that defendant did raise in her motion for summary disposition." *Id*. at 4 n 4.

After supplementary briefing and without oral argument, the trial court again granted summary disposition to defendant. The trial court gave among its reasons for granting summary disposition: (1) the CSA was a valid agreement, representing a meeting of the minds, which barred Smith's claims; (2) "Forrest was not subject to a covenant not to compete;" (3) the "act of the practice of law by Forrest is not a breach of contract, nor a breach of fiduciary duty, nor is it silent fraud;" (4) "Forrest had not [sic] duty to disclose her practice of law to Smith at, or before, the

-3-

facilitation;" (5) "in regard to the client lists, Smith has not shown any damages from the fact Forrest provided the lists to Longton;" (6) defendant had no fiduciary duty to plaintiff at the time of the negotiation and execution of the CSA, because defendant had left the firm; and (7) plaintiff's allegations of fraud were not made with the required specificity. The trial court also found "damages for emotional distress, loss of work income, attorney fees, diminution in value of the purchase of the asset, and costs" were waived by plaintiff when she entered the CSA. This appeal followed.

## II. STANDARD OF REVIEW

We review summary disposition rulings de novo. *Grossman v Brown*, 470 Mich 593, 598; 685 NW2d 198 (2004). This Court reviews a motion for summary disposition on appeal in the same way the trial court was obligated to review it. See *Bronson Methodist Hosp v Auto-Owners Ins Co*, 295 Mich App 431, 440; 814 NW2d 670 (2012).

MCR 2.116(C)(7) states a motion for summary disposition may be based on a contention that:

> Entry of judgment, dismissal of the action, or other relief is appropriate because of release, payment, prior judgment, immunity granted by law, statute of limitations, statute of frauds, an agreement to arbitrate or to litigate in a different forum, infancy or other disability of the moving party, or assignment or other disposition of the claim before commencement of the action. [MCR 2.116(C)(7).]

A motion under MCR 2.116(C)(7) may be supported by affidavits, depositions, admissions, or other documentary evidence, but need not be. See MCR 2.116(G)(3). The substance or content of any submitted supporting material must be admissible in evidence. *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). If such documentary evidence is submitted, the court must consider it. See MCR 2.116(G)(5); *Patterson v Kleiman,* 447 Mich 429, 432; 526 NW2d 879 (1994). In consideration of the motion, the contents of a complaint are accepted as true, unless contradicted by documentation submitted by the moving party. *Maiden*, 461 Mich at 119*; Patterson*, 447 Mich at 434 n 6.

A motion for summary disposition under MCR 2.116(C)(8) "tests the legal sufficiency of a claim and is tested on the pleadings alone." *Singerman v Municipal Serv Bureau, Inc*, 455 Mich 135, 139; 565 NW2d 383 (1997). When considering a motion under MCR 2.116(C)(8), a court must accept all well-pleaded factual allegations as true and construe them in a light most favorable to the nonmovant. *Maiden*, 461 Mich at 119. The court should grant the motion if the claim is so clearly unenforceable as a matter of law that no factual development could justify recovery. *Id*.

Summary disposition under MCR 2.116(C)(10) is warranted when "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). When moving under MCR 2.116(C)(10), the moving party has the initial burden to identify "the issues as to which the moving party believes there is no genuine issue as to any material fact." MCR 2.116(G)(4); see also *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 7; 890 NW2d 344 (2016). If the moving party properly asserts and supports their motion for summary disposition, the "burden then

shifts to the opposing party to establish that a genuine issue of disputed fact exists," and they cannot do this by relying on mere allegations or denials in their pleadings. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003); see also *Allison v AEW Capital Mgmt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

A motion for summary disposition under MCR 2.116(C)(10) tests the factual support for a claim. *Maiden*, 461 Mich at 120. In considering a motion for summary disposition, the court need only consider the evidence identified by the parties. See *Barnard Mfg Co v Gates Performance Engineering, Inc*, 285 Mich App 362, 377; 775 NW2d 618 (2009). "A court may only consider substantively admissible evidence actually proffered relative to a motion for summary disposition under MCR 2.116(C)(10)." *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013). The court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence submitted in the light most favorable to the nonmoving party, MCR 2.116(G)(5); *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012), and must draw all reasonable inferences in favor of the nonmoving party, *Dextrom v Wexford County*, 287 Mich App 406, 415-416; 789 NW2d 211 (2010). Further, the trial court may not make findings of fact or weigh credibility in deciding a motion for summary disposition. *Patrick v Turkelson*, 322 Mich App 595, 605; 913 NW2d 369 (2018). Appellate review of a summary disposition ruling is limited to the evidence presented to the trial court at the time the motion was decided. *Innovative Adult Foster Care, Inc v Ragin*, 285 Mich App 466, 475-476; 776 NW2d 398 (2009). Additionally, "[t]he interpretation of a contract is a question of law reviewed de novo on appeal." *Lueck v Lueck*, 328 Mich App 399, 404; 937 NW2d 729 (2019) (citation omitted).

## III. ANALYSIS

Plaintiff alleged an independent claim for invalidation of the CSA because of fraud or breach of fiduciary duty. Because plaintiff's claims of fraud and breach of fiduciary duty address the formation of the CSA, they question the validity of the CSA, and the trial court erred in finding the CSA waived any such claims. Plaintiff's arguments concerning defendant's breach of fiduciary duty support her claim for silent fraud in the formation of the contract, and the trial court erred in dismissing these claims. Additionally, the trial court erred in finding the CSA released defendant from a claim for damages that were a result of fraud in the formation of the CSA. A question of fact remains regarding what compensation plaintiff may be entitled to receive.

"A valid contract requires five elements: (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *AFT Mich v State of Michigan*, 497 Mich 197, 235; 866 NW2d 782 (2015). A release is a type of agreement subject to contract law. See *Paterek v 6600 Ltd.*, 185 Mich App 445, 449; 465 NW2d 342 (1990).

Mutuality of agreement entails a meeting of the minds on all the essential terms. *Burkhardt v Bailey*, 260 Mich App 636, 655; 680 NW2d 453 (2004). A meeting of the minds is judged objectively, considering "the express words of the parties and their visible acts, not their subjective

states of mind." *Calhoun County v Blue Cross Blue Shield of Michigan*, 297 Mich App 1, 13; 824 NW2d 202 (2012).

"When contract language is clear, unambiguous, and has a definite meaning, courts do not have the ability to write a different contract for the parties . . . ." *Mahnick v Bell Co*, 256 Mich App 154, 159; 662 NW2d 830 (2003). Turning specifically to breach of contract, to prove such a claim a party must establish: "(1) there was a contract, (2) the other party breached the contract, and (3) the breach resulted in damages to the party claiming breach." *Bank of America, NA v First American Title Ins Co*, 499 Mich 74, 100; 878 NW2d 816 (2016).

Common-law fraud requires proof:

(1) the [party] made a material representation; (2) the representation was false; (3) when the [party] made the representation, the [party] knew that it was false, or made it recklessly, without knowledge of its truth as a positive assertion; (4) the [party] made the representation with the intention that the [opposing party] would act upon it; (5) the [opposing party] acted in reliance upon it; and (6) the [opposing party] suffered damage. [*Maurer v Fremont Ins Co,* 325 Mich App 685, 695; 926 NW2d 848 (2018) (quotation marks and citation omitted).]

Reliance does not provide support for a fraud claim if it is unreasonable, for "[t]here can be no fraud where a person has the means to determine that a representation is not true." *Cummins v Robinson Twp*, 283 Mich App 677, 696; 770 NW2d 421 (2009). However, this threshold of reasonableness is seemingly low, not requiring investigation on the part of the defrauded. See *Titan Ins Co v Hyten*, 491 Mich 547, 570; 817 NW2d 562 (2012) ("Michigan's common law has consistently defined the elements of fraud without reference to whether the fraud could, upon the exercise of reasonable diligence in carrying out further investigation, have been discovered by the party claiming that it was harmed by the fraud.").

This Court has confirmed a finding of fraud can be entirely on the basis of omission, stating: "A fraud arising from the suppression of the truth is as prejudicial as that which springs from the assertion of a falsehood…." *Roberts v Saffell*, 280 Mich App 397, 403; 760 NW2d 715 (2008) (quotation marks and citation omitted). Silent fraud, also called fraudulent concealment, requires a showing that a party, who had a legal or equitable duty of disclosure, suppressed the truth with the intent to defraud. *Lucas v Awaad*, 299 Mich App 345, 363-364; 830 NW2d 141 (2013); *Roberts*, 280 Mich App at 403-404. A legal duty to disclose will arise in a circumstance where plaintiff makes an inquiry and gets an incomplete response. *Hord v Environmental Research Institute of Michigan*, 463 Mich 399, 412; 617 NW2d 543 (2000).

Our court rules state: "In allegations of fraud or mistake, the circumstances constituting fraud or mistake must be stated with particularity." MCR 2.112(B)(1). "[I]t is insufficient simply to state that a plaintiff's conduct was fraudulent," *Glasker-Davis v Auvenshine*, 333 Mich App 222, 232; 964 NW2d 809 (2020), and a fraud claim must identify the facts of the alleged claim of fraud, addressing each element of the tort, *Stephens v Worden Ins Agency, LLC*, 307 Mich App 220, 229-230; 859 NW2d 723 (2014). To prevail on a claim of fraud, a plaintiff must prove each element with "clear and convincing evidence." *Flynn v Korneffel*, 451 Mich 186, 199; 547 NW2d 249 (1996). "Clear and convincing evidence is defined as evidence that produce[s] in the mind of

the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established….” *Kefgen v Davidson*, 241 Mich App 611, 625; 617 NW2d 351 (2000).

A party requesting rescission of a settlement agreement must prove there was duress, fraud, mutual mistake, severe stress, unconscionable advantage, or ignorance of a material term. *Plamondon v Plamondon*, 230 Mich App 54, 56; 583 NW2d 245 (1998). In resolving questions of intent of the parties, courts may consider the circumstances surrounding the execution of a release, including the conduct and intelligence of the parties. See *Denton v Utley*, 350 Mich 332, 345; 86 NW2d 537 (1957). While tender of consideration received is a condition precedent to the right to repudiate a settlement contract, *Smith Living Trust v Erickson Retirement Communities*, 326 Mich App 366, 388; 928 NW2d 227 (2018), the tender-back rule does not apply to fraud in the execution of a release, *Collucci v Eklund*, 240 Mich App 654, 659; 613 NW2d 402 (2000).

Additionally, our Supreme Court has stated that a business partnership “is presumed to be based upon mutual trust and confidence and the utmost good faith is requisite in the relations between the partners.” *Penner v DeNike*, 288 Mich 488, 490; 285 NW 33 (1939). Because of this, partners in a business are accountable to each other as fiduciaries, and it is the duty of each of the partners “to render true and full information to the other.” *Id*. This Court has stated:

> The courts universally recognize the fiduciary relationship of partners and impose on them obligations of the utmost good faith and integrity in their dealings with one another in partnership affairs. Partners are held to a standard stricter than the morals of the marketplace and their fiduciary duties should be broadly construed, connoting not mere honesty but the punctilio of honor most sensitive. The fiduciary duty among partners is generally one of full and frank disclosure of all relevant information. Each partner has the right to know all that the others know, and each is required to make full disclosure of all material facts within his knowledge in any way relating to the partnership affairs. [*Urbain v Beierling*, 301 Mich App 114, 125; 835 NW2d 455 (2013) (quotation marks and citations omitted).]

Settlement is “a compromise of a disputed claim,” *Reicher v SET Enterprises, Inc*, 283 Mich App 657, 664; 770 NW2d 902 (2009), and settlement agreements are generally “favored by the law” and “cannot be modified,” *Clark v Al-Amin*, 309 Mich App 387, 395; 872 NW2d 730 (2015) (quotation marks and citation omitted). Courts are bound to enforce valid settlement agreements. *Lentz v Lentz*, 271 Mich App 465, 474; 721 NW2d 861 (2006). The scope of a release is controlled by the intent of the parties, *Gortney v Norfolk & Western Railroad Co*, 216 Mich App 535, 540; 549 NW2d 612 (1996), and if the language of a release is clear and unambiguous, the plain and ordinary meaning of it applies, *Batshon v Mar-Que General Contractors, Inc*, 463 Mich 646, 649-650; 624 NW2d 903 (2001). “The fact that the parties dispute the meaning of a release does not, in itself, establish an ambiguity.” *Cole v Ladbroke Racing Mich, Inc*, 241 Mich App 1, 14; 614 NW2d 169 (2000) (citation omitted).

However, under her fraud and breach of fiduciary duty claims, plaintiff is not requesting modification of the CSA, which would contradict caselaw. *Clark*, 309 Mich App at 395. Instead, plaintiff is arguing the CSA was never a valid contract because of a lack of mutuality of agreement. *AFT Mich*, 497 Mich at 235. Importantly, a finding of fraud in the inducement renders the induced

contract voidable "at the option of the defrauded party." *Samuel D Begola Servs, Inc v Wild Brothers*, 210 Mich App 636, 640; 534 NW2d 217 (1995).

Turning specifically to the legality of any covenant not to compete, MRPC 1.17 states, in pertinent part:

> (a) A lawyer or a law firm may sell or purchase a private law practice, including good will, pursuant to this rule.
>
> * * *
>
> (e) The sale of the good will of a law practice may be conditioned upon the seller ceasing to engage in the private practice of law for a reasonable period of time within the geographical area in which the practice had been conducted. [MRPC 1.17(a) and MRPC 1.17(e).]

Such a covenant is legal, provided it protects against an employee's gain of an unfair advantage in competition with the employer, but does not function as a prohibition of an employee using his or her own general knowledge or skill. *St Clair Med, PC v Borgiel,* 270 Mich App 260, 266; 715 NW2d 914 (2006). By statute:

> An employer may obtain from an employee an agreement or covenant which protects an employer's reasonable competitive business interests and expressly prohibits an employee from engaging in employment or a line of business after termination of employment if the agreement or covenant is reasonable as to its duration, geographical area, and the type of employment or line of business. [MCL 445.774a(1).]

In arguing for the validity of the CSA, defendant cites *Clark*, 309 Mich App 387, in which the plaintiff settled her claim against an insurer for accident injury benefits owed in exchange for a $78,000 payment. *Id*. at 388. The plaintiff sought to rescind the agreement days after it was executed, claiming she had just learned of an additional bill for $29,000 in medical services incurred several months before the settlement. *Id*. at 388-389. The trial court found because the insurer was aware of the bill and the plaintiff was not, the settlement agreement did not settle the claim for that expense. *Id*. at 389. This Court found it was "conjecture to allege that [the insurer] knew that plaintiff lacked knowledge of this charge," and reversed the trial court's ruling, remanding for entry of an order enforcing the settlement agreement. *Id*. at 390-391.

Plaintiff alleges fraud by omission, or silent fraud. Plaintiff made a showing of materiality of and reliance on the omissions, *Maurer*, 325 Mich App at 695, by way of her affidavit. Plaintiff averred her agreement to the CSA was "predicated, in part on the fact that Defendant Forrest was not going to be in competition with me," and she believed she was purchasing "the undiluted . . . interest in our law firm," which included the "value of the firm's good will" and the client list. Plaintiff also stated, had she known about the client list transfer and defendant's continued practice of law, she "would not have agreed to purchase her remaining 50% interest in the law firm at the price I paid."

-8-

Though unreasonable reliance does not support a fraud claim, *Cummins*, 283 Mich App at 696, this threshold of reasonableness does not require independent investigation on the part of the defrauded, see *Titan Ins*, 491 Mich at 570. Plaintiff's only way to know defendant transferred the client list to Longton would have been to ask whether the list had been transferred, and defendant presents no explanation as to why plaintiff should have suspected this was a possibility. Plaintiff's reliance on defendant's noncompetition is more questionable, considering that the parties at no point agreed that defendant would not reenter the practice of law. However, more broadly, plaintiff's reliance on the retention of the good will of the firm is a different matter, considering such an exchange is explicitly considered in MRPC 1.17. Plaintiff's assumption defendant was not going to continue her law practice in the exact location of their former firm, blurring the identity of her new practice with that of the parties' former firm, was at least a reasonable assumption on plaintiff's part. This is especially true considering that during the CSA facilitation plaintiff was negotiating for ownership of the remaining assets of the firm, which the parties agreed would be dissolved. Plaintiff reasonably assumed that she was gaining something of value from the consideration she conveyed to defendant by way of the CSA, and that this would have included that defendant had not conveyed firm assets (the client list) to a competitor law firm along with the goodwill of the firm, and that defendant had not already joined a competing law practice. There remains a question of fact whether plaintiff reasonably relied on defendant's omissions.

Plaintiff has also presented evidence to support she incurred damages because of defendant's omissions. *Maurer,* 325 Mich App at 695. In her affidavits, plaintiff stated she would not have agreed to the CSA terms had she known the facts defendant omitted, and she quantified the cost to her from this "bogus" agreement as the $25,000 cash and $84,481.37 value of the accounts receivable she was required to transfer to plaintiff.

Turning to defendant's intent, while a showing of fraud requires proof "the [party] made the representation with the intention that the [opposing party] would act upon it," *Maurer,* 325 Mich App at 695, in resolving questions of intent of the parties to a release courts may consider the circumstances surrounding the execution of a release, including the conduct and intelligence of the parties, see *Denton*, 350 Mich at 345. Defendant's position of former mentor and landlord, the unclear nature of the dispute concerning the original verbal agreement, and the timing of defendant's dealings with Longton—after plaintiff claimed to have completed the terms of the verbal agreement and asked defendant to relinquish her ownership rights—all provide circumstantial support to plaintiff's characterization of defendant as intentionally concealing information and taking advantage of plaintiff's ignorance. This case is unlike *Clark*, 309 Mich App 387, in which this Court found the trial court's finding of an insurer's intentionality could only be on the basis of conjecture, when it was more likely the insurer assumed the plaintiff knew about her own medical bills. *Id*. at 390-391. Conversely, here defendant's omissions concerned information she controlled and plaintiff did not have reason to know. There remains a question of fact regarding defendant's intent to induce plaintiff to agree to the CSA on the basis of her omissions.

Having established questions of fact regarding the other elements of a fraud claim, all that is left to determine is whether defendant's omissions potentially qualify as fraudulent misrepresentations under a claim of silent fraud. Because a party's suppression of the truth when it has a legal or equitable duty of disclosure establishes silent fraud, *Lucas*, 299 Mich App at 363-364; *Roberts*, 280 Mich App at 403-404, a search for any such duty is required to assess plaintiff's

fraud claim. In this way, plaintiff's fraud claim and breach of fiduciary duty claim work in concert to establish a claim of silent fraud that survives summary disposition.

Although the CSA resulted in the transfer of any remaining ownership of the firm from defendant, and the subsequent dissolution of the firm, defendant and plaintiff were still partners during the negotiation of the CSA, and in the months leading up to it. In fact, what plaintiff was required to do before defendant would agree to transfer her ownership rights was the major point of contention. "[F]ull and frank disclosure of all relevant information," undoubtedly includes a requirement between partners to disclose the sharing of a client list and the use of a principal's services by another firm. *Urbain*, 301 Mich App at 125. While she was still a partner in the firm, a "punctilio of honor most sensitive" was required of defendant with respect to sharing information about the firm with plaintiff, *id.*, which establishes a legal duty of disclosure, the neglect of which can amount to silent fraud, *Lucas*, 299 Mich App at 363-364; *Roberts*, 280 Mich App at 403-404. A question of material fact exists whether defendant committed omissions that justify rescission of the CSA.

The CSA's release clause states: "Each party releases the other for all time with respect to any claim they have or could have asserted for any event occurring before the effective date of this Confidential Settlement Agreement." This Court has found broad language such as this absolutely releases the parties from liability, *Stolaruk Corp v Central Nat'l Ins Co of Omaha*, 206 Mich App 444, 449-450; 522 NW2d 670 (1994), and that courts are bound to enforce valid settlement agreements, *Lentz*, 271 Mich App at 474. However, a party may be entitled to rescission of a settlement agreement for fraud that occurred during the formation of the agreement. *Plamondon*, 230 Mich App at 56.

Because plaintiff stated a valid claim for silent fraud in the formation of the CSA, including damages, what is at stake is rescission of the CSA. If granted, rescission would abrogate the agreement and restore the parties to their relative positions had the agreement never been made. See *Wall v Zynda*, 283 Mich 260, 264; 278 NW 66 (1938). This would not require return of consideration either party obtained from the other in execution of the original verbal agreement, only the return of the consideration exchanged in the CSA: the then remaining value of defendant's share of the firm for $25,000, and the value of the then-remaining accounts receivable and information associated with those clients. In her affidavits, plaintiff valued her damages from this exchange as approximately $110,000,[1] and the propriety of this amount remains for the finder of

---

[1] In her presentation of damages in her second affidavit, plaintiff also includes: (1) the amount she paid to buy out defendant before the CSA negotiation; (2) $25,000 for "the loss of good will;" (3) "[a] to-be-determined amount" concerning any referrals to the Longton firm or value of the client list; (4) $50,000 for emotional distress and anxiety; (5) $34,00 for loss of work time; and (6) costs and attorney fees. The trial court was correct to point out arguments for damages 4, 5, and 6 are abandoned because no legal authority was provided to support them. *Mitcham v City of Detroit,* 355 Mich 182, 203; 94 NW2d 388 (1959). Damages 1, 2, and 3 are inappropriate as compensation for plaintiff's claim for fraud and breach of fiduciary duty because the remedy sought, rescission,

fact. *Patrick*, 322 Mich App at 605. Importantly, the potential application of the law of rescission to plaintiff's claims requires nothing more than a return of the parties to their dispute over the original verbal agreement, but if the CSA is invalid because of fraud, it cannot release defendant from liability for any damages plaintiff incurred because of that fraud.

## IV.  CONCLUSION

Plaintiff alleged an independent claim for invalidation of the CSA because of fraud or breach of fiduciary duty.  Because plaintiff's claims of fraud and breach of fiduciary duty address the formation of the CSA, they question the validity of the CSA, and the trial court erred in finding the CSA itself waived any such claims.  Plaintiff's arguments concerning defendant's breach of fiduciary duty support her claim for silent fraud in the formation of the contract, and the trial court erred in dismissing these claims.  Additionally, the trial court erred in finding the CSA released defendant from a claim for damages that were a result of fraud in the formation of the CSA.  A question of fact remains regarding what compensation plaintiff may be entitled to.  Reversed and remanded.  We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Mark J. Cavanagh
/s/ Michael F. Gadola

---

restores the parties to their relative positions had the CSA never been made.  See *Wall*, 283 Mich at 264-265.